**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6560**

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

    v.

DAVID CHRISTOPHER MAYHEW,

            Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:13-cr-00199-BO-2; 5:18-cv-00415-BO)

Argued:  January 29, 2021                          Decided:  April 19, 2021

Before DIAZ, FLOYD, and HARRIS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Diaz and Judge Floyd joined.

**ARGUED:**  Caitlin Augerson, Katharine Batchelor, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF:**  John J. Korzen, Director, Ryan C. Dibilio, Third-Year Law Student, Timothy Misner, Third-Year Law Student, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United

States Attorney, Evan M. Rikhye, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

––––––––––––––

PAMELA HARRIS, Circuit Judge:

A jury convicted David Christopher Mayhew of fraud charges stemming from an investment scam, and Mayhew was sentenced to over 26 years' imprisonment. He filed a § 2255 petition seeking to vacate his conviction and sentence, asserting that his Sixth Amendment rights were violated when his trial counsel provided ineffective assistance. The district court dismissed the petition without a hearing, and Mayhew appealed.

We granted a certificate of appealability on two of Mayhew's claims. In the first, Mayhew alleged that his lawyer guaranteed him – incorrectly, as it turned out – that he would be sentenced only to two to five years' imprisonment if he were convicted at trial, and that he relied on that guarantee when he rejected a plea offer from the government. The district court dismissed this claim, concluding that any prejudice caused by counsel's error necessarily would have been cured when the court at Mayhew's arraignment advised him of his actual sentencing exposure. We disagree: Because the court's corrective came *after* Mayhew already had rejected the plea offer, we cannot assume without more that it cured the prejudice Mayhew alleges. We therefore conclude that Mayhew is entitled to an evidentiary hearing on this claim.

Mayhew's second claim alleged that his counsel performed deficiently in connection with the amount of restitution he owed, failing to object to the inclusion of losses that stemmed from conduct for which he had not been convicted. The district court dismissed that claim on the ground that challenges to restitution orders may not be raised by way of § 2255. We agree with that holding. But Mayhew was not challenging only his restitution order; he also alleged that the same erroneous calculation affected his Guidelines

3

sentencing range and hence his term of imprisonment. That claim is cognizable under § 2255, and we remand so that the district court may address it in the first instance.

## I.

### A.

In July of 2013, David Christopher Mayhew was charged with committing wire and mail fraud in violation of 18 U.S.C. §§ 1343 and 1341; engaging in unlawful monetary transactions in violation of 18 U.S.C. § 1957; and conspiring to commit these offenses in violation of 18 U.S.C. § 371. The charges stemmed from a fraudulent investment scheme that Mayhew allegedly operated with another individual. In July of 2014, a superseding indictment added several additional wire-fraud charges related to Mayhew's conduct both before and after his initial indictment.

Mayhew was not arraigned on this superseding indictment for nearly a year – in part, it appears, as a result of Mayhew's request for new counsel, which was granted by the district court. In the intervening period, the court dismissed the new wire-fraud charges from the superseding indictment on the government's motion. Finally, in June of 2015, Mayhew was arraigned on the superseding indictment, and pleaded not guilty.

Mayhew's jury trial began the next day. At the close of the government's case, Mayhew moved for acquittal on all counts. The court granted the motion in part, dismissing five wire-fraud counts. The jury then returned a guilty verdict on all remaining counts.

Mayhew was sentenced in January of 2016. At his sentencing hearing, the district court concluded, consistent with the probation officer's presentence report ("PSR"), that the total loss amount attributable to Mayhew was $2,026,000. This triggered a 16-level increase in Mayhew's total offense level, *see* U.S.S.G. § 2B1.1(b)(1)(I), and led to a Guidelines sentencing range of 108 to 135 months' imprisonment. The district court then made upward adjustments to Mayhew's criminal history category and total offense level, to better reflect the seriousness of Mayhew's past criminal activity and offense conduct, resulting in a final Guidelines range of 262 to 327 months' imprisonment.

The district court sentenced Mayhew to a total term of 320 months: 60 months on the conspiracy count; 240 months on the wire and mail fraud counts, to run concurrently with the conspiracy sentence; and 80 months on the unlawful monetary transaction counts, to run consecutively to the other sentences. The district court also sentenced Mayhew to three years of supervised release. Finally, the district court ordered Mayhew to pay $2,025,300 in restitution to multiple victims of the investment scam. According to Mayhew's PSR, this number was slightly lower than the $2,026,000 loss amount because one of Mayhew's victims had received $700 from the bank account of another victim.

This court affirmed Mayhew's convictions and sentence on appeal, *see United States v. Mayhew*, 715 F. App'x 232, 233 (4th Cir. 2017) (per curiam), and the Supreme Court denied certiorari, *see Mayhew v. United States*, 138 S. Ct. 1314 (2018) (Mem.).

**B.**

In 2018, proceeding *pro se* – that is, without the assistance of counsel – Mayhew filed the 28 U.S.C. § 2255 petition that is the subject of this appeal. Mayhew's petition

5

raised over a dozen claims, but only two are relevant here. First, Mayhew alleged that he was denied the effective assistance of counsel in violation of the Sixth Amendment when his counsel misadvised him about his sentencing exposure during the plea-bargaining process, causing him to turn down a favorable plea offer from the government. Second, Mayhew alleged that his counsel again performed ineffectively when he failed to object to the inclusion, in the loss-amount calculation underlying his restitution order, of amounts payable to three parties: United Global Investments, Inc., Frank McGrath, and James Perry Fergus. According to Mayhew, those amounts were tied to wire-fraud charges that were dismissed – on either the government's pre-trial motion or his own motion for acquittal – and thus not derived from conduct for which he was convicted.

The district court dismissed these two claims without an evidentiary hearing, along with the entirety of Mayhew's petition. *See Mayhew v. United States*, No. 5:13-cr-00199-BO-2, 2019 U.S. Dist. LEXIS 60509, at *5–6, *9, *11–12 (E.D.N.C. Apr. 3, 2019). It also denied a certificate of appealability as to all of Mayhew's claims. *Id.* at *11–12. When Mayhew timely appealed, our court granted a certificate of appealability on three questions arising out of the two claims noted above:

> Whether defense counsel rendered ineffective assistance in advising Mayhew that, if he went to trial and was convicted, he would receive a sentence of between two and five years in prison;

> Whether Mayhew's claim that defense counsel rendered ineffective assistance in failing to object to restitution sums to be paid to United Global Investments, Inc., Frank McGrath, and James Perry Fergus is cognizable under § 2255; and

6

> If this claim is cognizable under § 2255, whether defense counsel rendered ineffective assistance in failing to object to restitution sums to be paid to United Global Investments, Inc., Frank McGrath, and James Perry Fergus.

*United States v. Mayhew*, No. 19-6560 (4th Cir. Jan. 23, 2020).

## II.

We begin by setting out the legal framework that governs our review, and then turn to the two claims of ineffective assistance of counsel on which we granted a certificate of appealability.

On an appeal from the denial of a § 2255 petition, we review the district court's legal conclusions de novo. *See United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017). When, as in this case, "the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment," and the facts must be viewed "in the light most favorable to the § 2255 movant." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

Mayhew's Sixth Amendment ineffective assistance of counsel claims are governed by the well-established framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Mayhew must show first that counsel's performance was constitutionally deficient, *id.* at 687, overcoming the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). And under *Strickland*'s second prong, Mayhew must establish prejudice, in the form of a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A district court must hold an evidentiary hearing on a petitioner's *Strickland* claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see United States v. Thomas*, 627 F.3d 534, 539 (4th Cir. 2010). Although whether to hold a hearing ordinarily is a matter of district court discretion, *see Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970), a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim, *see United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000).

**A.**

Mayhew's first claim of ineffective assistance alleges that his counsel performed deficiently before trial, during plea bargaining. The Sixth Amendment right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The standard *Strickland* inquiry governs, and a defendant establishes prejudice by showing that but for the ineffective assistance of counsel, there is a "reasonable probability" that he would have accepted a plea, that the court would have approved its terms, and that the resulting conviction or sentence "would have been less severe" than that actually imposed. *Id.* at 164.

The district court dismissed Mayhew's claim on the ground that he could not show prejudice under this standard. On appeal, the government contests both the deficient performance and the prejudice prongs. As detailed below, we find that the record does not

8

"conclusively" foreclose a finding of either deficient performance or prejudice, and therefore vacate the district court's dismissal of this claim and remand for an evidentiary hearing under § 2255(b).

1.

We begin with the particulars of Mayhew's claim and the relevant facts. Mayhew alleges – and the government does not dispute – that before trial, the government offered him a plea deal that would have allowed him to plead guilty to a single conspiracy count, with a "zero-to-five[-]year imprisonment range." J.A. 234. But his counsel, Mayhew continues, "guaranteed" him that if he exercised his right to trial and was convicted, he "would receive a sentence between two [and] five years imprisonment." *Id.* Based on that advice, Mayhew contends, he saw "no benefit in pleading guilty seeing that the exposure was virtually the same" and rejected the government's offer. J.A. 235.

After turning down the government's plea offer, Mayhew was arraigned, along with several other defendants who were entering pleas at the same time. The district court provided two admonitions relevant here. First, addressing all the defendants, the district court cautioned that their attorneys' calculations of their "anticipated sentence[s]" were only "estimate[s]," and that it was the court alone that would determine their sentences. J.A. 85. Second, in an individual colloquy with Mayhew, the court advised Mayhew of the maximum penalties authorized by statute for the counts against him: a prison term of up to 5 years on the conspiracy charge, 20 years on each of the wire and mail fraud charges, and 10 years on each of the monetary transaction charges.

9

After the district court listed those penalties, Mayhew stated that he was pleading not guilty. Mayhew's counsel confirmed, at the government's request, that Mayhew previously had been advised of and rejected the government's plea offer; a counter-offer by Mayhew had been rejected by the government just the night before the arraignment. And Mayhew confirmed that "I have every intention of going to trial and want to go to trial," though he also expressed "major concerns" with his attorney. J.A. 101. The case proceeded to trial, where, as noted, Mayhew was convicted and sentenced to 320 months, or over 26 years – well in excess of the zero-to-five years offered by the government.

2.

The government does not meaningfully dispute that *if* Mayhew's counsel in fact advised him that he was certain to receive a sentence of between two and five years, then that gross error can satisfy *Strickland*'s deficient performance prong. *See, e.g.*, *O'Tuel v. Osborne*, 706 F.2d 498, 499–501 (4th Cir. 1983) (holding that "gross misinformation" from counsel about parole eligibility, which caused defendant to accept guilty plea, constituted ineffective assistance of counsel).[1] Instead, the government insists that because Mayhew

---

[1] The government does suggest that because Mayhew's counsel provided "cogent and detailed" objections to the PSR, his overall performance necessarily meets the *Strickland* standard of objective reasonableness. We disagree. A counsel's general understanding of the Sentencing Guidelines may help to show that his advice about sentencing exposure in fact was reasonable, as we found in the case on which the government relies. *See United States v. Merritt*, 102 F. App'x 303, 308 (4th Cir. 2004) (per curiam). But here, it is undisputed that counsel's alleged advice – promising a sentence of two to five years – was *incorrect*, and by a very wide margin. If that indeed was counsel's advice, then it may by itself constitute deficient performance, regardless of the quality of counsel's representation during the rest of the proceeding. *See Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986) ("[A] single, serious error may support a claim of

10

has not substantiated his core allegation – that his counsel promised him a sentence of no more than five years – the district court properly dismissed his petition. But the government, in asserting that "[t]he record does not conclusively show that Mayhew received any misinformation from his defense counsel," Appellee's Br. 27, gets the standard precisely backwards: As we have noted, Mayhew is entitled to an evidentiary hearing on his claim unless the record "conclusively show[s]" that he did *not* receive the misinformation in question. *See* 28 U.S.C. § 2255(b). The government offered no evidence, in its response to Mayhew's petition, contradicting Mayhew's account. And we cannot say that this record, construed in the light most favorable to Mayhew, *see Poindexter*, 492 F.3d at 267, "conclusively" rebuts Mayhew's allegation.

The government is wrong when it asserts that there is not a "scintilla" of evidence that Mayhew's counsel grossly misadvised him about his sentencing exposure. Mayhew has declared, in his signed *pro se* § 2255 petition and under penalty of perjury, that his counsel guaranteed him a sentence of between two and five years. *See* 28 U.S.C. § 1746 (providing that a declaration under penalty of perjury can satisfy a requirement for a sworn declaration). That is enough to put the question at issue. *See United States v. Ray*, 547 F. App'x 343, 346 (4th Cir. 2013) (per curiam) (holding that petitioner's own assertions about counsel's advice during plea negotiations raised factual question requiring evidentiary

___

ineffective assistance of counsel . . . ."); *Tice v. Johnson*, 647 F.3d 87, 106 (4th Cir. 2011) ("[E]ven an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial." (internal quotation marks omitted)).

11

hearing).[2]  Still, the government says, we may dispense here with Mayhew's attestation because it lacks all credibility; in particular, the government asserts Mayhew latched onto the issue only when he filed his § 2255 petition in 2018, well after his trial and sentencing. But in fact, Mayhew first raised his counsel's purported "guarantee" of a two-to-five-year sentence back in 2015, immediately after his trial, in a *pro se* motion seeking new counsel. *See* Mot. Recons. at 2, *United States v. Mayhew*, No. 5:13-cr-00199-BO-2 (E.D.N.C. Oct. 9, 2015), ECF No. 172.  And in any event, we are in no position to evaluate Mayhew's credibility ourselves on appeal; that is what evidentiary hearings are for.  *See United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) (explaining that "an evidentiary hearing is especially warranted" where allegations relate primarily to out-of-courtroom occurrences and require credibility determinations).

In short, whether Mayhew's counsel performed deficiently by guaranteeing him a sentence of no more than five years can be determined "conclusively" only after an evidentiary hearing.  *See* 28 U.S.C. § 2255(b).  Because the district court dismissed

---

[2] Mayhew also attached to his petition two documents styled as affidavits but unsigned.  One, written from the perspective of his counsel, confirmed that counsel had "guaranteed" that if convicted, Mayhew "would receive a sentence between two and five years['] imprisonment." J.A. 311.  According to Mayhew, his counsel led him to believe that he would sign the document but then refused to do so.  Still, Mayhew attested, the "claims are true and correct." J.A. 313.  The second document purported to be from another individual asserting that he had been "told by David Mayhew's trial lawyer . . . that David would receive between two and five years if he lost at trial." J.A. 315.  Here, Mayhew explained that he had not yet "received the signed copy" of the affidavit, but that the "[a]ffiant is available to subpoena to testify to the facts stated herein." J.A. 316.

Mayhew's claim on a different ground – *Strickland*'s prejudice prong, addressed below – it did not hold such a hearing. Accordingly, and contrary to the government's argument, we cannot affirm that dismissal under *Strickland*'s deficient-performance prong.

3.

The district court relied wholly on *Strickland*'s prejudice prong in dismissing Mayhew's claim, and in particular on the requirement that Mayhew establish a reasonable probability that he would have accepted the government's plea offer had he not been misadvised by counsel. *See Lafler*, 566 U.S. at 163–64.[3] At Mayhew's arraignment, the district court explained, the court correctly informed him of his sentencing exposure, and Mayhew still chose to go to trial. *See Mayhew*, 2019 U.S. Dist. LEXIS 60509, at *5–6. It necessarily followed, the court concluded, that Mayhew could not "allege that he would have pleaded guilty" had his counsel likewise advised him of his actual sentencing range. *Id.* at *6. We disagree. Under the circumstances here, the court's admonitions at Mayhew's arraignment do not by themselves conclusively establish a lack of prejudice, and on this *Strickland* prong, too, an evidentiary hearing is required under § 2255(b).

---

[3] The other elements of a prejudice showing in this context – that the plea offer in question, if accepted by the defendant, would have been approved by the district court; and that the sentence under the offer's terms would have been less severe than the one actually imposed, *see Lafler*, 566 U.S. at 163–64 – do not appear to be at issue. On appeal, the government, echoing the district court, addresses only the threshold question of whether Mayhew can show a reasonable probability that he would have accepted the government's plea offer absent any misadvice from counsel. There is nothing to suggest that the government's offer would not have been approved by the court, and of course it is clear that the terms of that offer – a sentence of zero to five years – were substantially less severe than the 26-year-plus term ultimately imposed.

13

It is true, as the government argues, that in a similar context, we have held that the effects of defense counsel's misinformation about sentencing exposure may be cured by a court at arraignment. Specifically, if a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice "was corrected by the trial court at the Rule 11 hearing," then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995); *see also United States v. Akande*, 956 F.3d 257, 262 (4th Cir. 2020) (defendant cannot prevail under *Strickland*'s prejudice prong "if, before accepting [a] plea, the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment" (internal quotation marks omitted)).

Here, the government, like the district court, claims that counsel's alleged misadvice was cured by the twin cautions offered by the court at Mayhew's arraignment: first, the statement to the group of defendants that the court alone would decide their sentences, notwithstanding the "estimate[s]" of their lawyers, J.A. 85; and second, the recitation to Mayhew of the maximum penalties for the charges against him. Had Mayhew subsequently pled guilty after a Rule 11 colloquy, then those statements, taken together, may well have been enough to cure his counsel's misadvice. But there is a fundamental problem with applying that principle here, and it has to do with timing: The court's admonitions in this case came only *after* Mayhew already had rejected the government's plea offer, and there is no indication – in the record or from the government on appeal – that the offer remained open at that point.

14

This is not a case, in other words, like those discussed above, in which a defendant accepts a government plea offer and pleads guilty in accordance with that offer only after a Rule 11 colloquy during which he hears a district court's corrective admonitions and indicates his understanding of them. *See Foster*, 68 F.3d at 88 (no *Strickland* prejudice where "the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information . . . and the defendant admits to understanding the court's advice" and subsequently pleads guilty (internal quotation marks omitted)). Here, the relevant decision – the one that must be causally tied to counsel's misadvice in order to establish *Strickland* prejudice – was Mayhew's decision to *reject* the government's plea offer, which happened before his arraignment and before, not after, he had the benefit of the court's admonitions. *See* J.A. 101 (counsel's statement, at arraignment, that Mayhew already had rejected the government's proffered plea deal, and that the government had rejected Mayhew's counter-offer the night before). And because there was no guilty plea to be entered, there also was no Rule 11 colloquy, and hence no confirmation that Mayhew understood the advice he received. *Cf.* Fed. R. Crim. P. 11(b); *Foster*, 68 F.3d at 88.

Under those circumstances, we conclude, the district court erred in treating the court's after-the-fact advisements as conclusive on the question of prejudice. *Cf. United States v. Murillo*, 927 F.3d 808, 816 (4th Cir. 2019) ("Giving dispositive weight to boilerplate language from a plea agreement is at odds with *Strickland*'s fact-dependent prejudice analysis."). We recognize that after hearing the court's admonitions, Mayhew affirmed that he was rejecting the government's plea offer and "want[ed] to go to trial." J.A. 101; *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open

15

court carry a strong presumption of verity."). But we consider such "sworn statements . . . in their context," *Murillo*, 927 F.3d at 817, and here, the context is that Mayhew already had decided, before his arraignment and the court's warnings, to reject the plea deal and proceed to trial, allegedly because his counsel had guaranteed him a sentence of no more than five years if convicted. Nor does the record as it now stands indicate that the government's offer remained open to Mayhew *after* he had the benefit of the court's corrective statements, so that he could change course and accept, or establish that Mayhew would have felt free to insist on another chance to consider the offer in light of what he just had heard.

Without more, we find, this record does not conclusively demonstrate that the court's admonitions at Mayhew's arraignment effectively cured counsel's alleged misadvice, making it impossible for Mayhew to establish a reasonable probability that – as he has attested – he would have accepted the government's plea offer were it not for his counsel's erroneous sentencing guarantee. Accordingly, we vacate the district court's dismissal of Mayhew's claim and remand for an evidentiary hearing under § 2255(b) to determine whether Mayhew can meet *Strickland*'s prejudice prong.

To be clear, we express no view as to whether Mayhew ultimately can prevail under either prong of *Strickland*. The district court, after a hearing, may find that Mayhew's account of his counsel's sentencing "guarantee" is not accurate, or that his allegations otherwise lack credibility. Or the court might find that a fuller record substantiates the government's position that Mayhew, who adamantly maintained his innocence, would have insisted on going to trial regardless of any misadvice by his counsel about sentencing

16

exposure. Our holding today is simply that the current record does not "conclusively" foreclose Mayhew's *Strickland* claim, and that Mayhew therefore is entitled to an evidentiary hearing under § 2255(b).

**B.**

We turn now to Mayhew's second claim: that he again was denied his Sixth Amendment right to counsel when his counsel performed deficiently by failing to object to an erroneous restitution calculation. The district court dismissed this claim without reaching the merits, holding that § 2255 may not be used to challenge restitution orders. We agree with the district court on that score, and affirm the dismissal of Mayhew's claim to the extent he seeks vacatur of his restitution order. Properly read, however, Mayhew's *pro se* petition challenges not only his restitution order but also his term of confinement, alleging that his sentence, too, was affected by counsel's deficient performance. That claim is cognizable under § 2255, and we remand to the district court so that it may address it in the first instance.

1.

Under the Mandatory Victims Restitution Act of 1996 ("MVRA") – on which the district court relied in ordering Mayhew to pay $2,025,300 in restitution – a "defendant convicted of" certain offenses, including mail and wire fraud, will be required to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). As we have explained, the MVRA focuses on "the 'offense of conviction' when describing the losses subject to a restitution order." *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003). That means – and this much appears to be common ground – that the MVRA authorizes a court

17

to order restitution only for losses that flow from "the specific conduct that is the basis of the defendant's offense of conviction." *United States v. Freeman*, 741 F.3d 426, 435 (4th Cir. 2014) (internal quotation marks omitted); *see Newsome*, 322 F.3d at 341; *see also Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that analogous restitution statute "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction").

The crux of Mayhew's second claim is that the restitution calculation in his case exceeded that limit, and that his counsel provided ineffective assistance when he failed to object and bring that manifest error to the district court's attention. In his § 2255 petition, Mayhew alleged that his "restitution calculation" included putative losses totaling $1,125,500 suffered by three parties – United Global Investments, Inc.; Frank McGrath; and James Fergus, Jr. – despite the fact that he was not convicted of any of the charges related to those parties. Instead, according to Mayhew, the counts charging receipt of payments from United Global Investments were dismissed before trial on the government's motion, and those charging payments from McGrath and Fergus were dismissed when the court granted in part Mayhew's motion for acquittal. Because the MVRA and governing case law "clearly spell out that restitution amounts must be tied to conduct for which a resulting conviction occurred," Mayhew concluded, "counsel was obligated to object" to the inclusion of these amounts under "prevailing professional norms" and "performed deficiently" when he failed to do so. J.A. 294–95.

Mayhew's petition then turns to *Strickland* prejudice: "The prejudice that resulted from this substandard performance was $1,125,500 in unlawful restitution." J.A. 295. And

18

that same amount, Mayhew alleged, also "was responsible for the 16-level enhancement" to his total offense level "under § 2B1.1(b)(1)(I) of the United States Sentencing Guidelines," so that counsel's deficient performance resulted in both "an enhanced guideline range and a heightened restitution amount." *Id.* Mayhew finished by asking that the court "vacate the restitution order." *Id.*

2.

The district court dismissed Mayhew's claim in its entirety because, it held, "§ 2255 motions cannot be used to obtain relief from restitution orders." *Mayhew*, 2019 U.S. Dist. LEXIS 60509, at *9. We think this is correct, as far as it goes, and affirm the dismissal of Mayhew's challenge to his restitution order.

The question raised by this portion of Mayhew's appeal is whether relief from restitution – here, Mayhew's request that the district court vacate his restitution order – is a remedy authorized by § 2255. To answer that question, we may start and finish with the text of § 2255, which details the circumstances under which a "prisoner in custody under sentence of a court established by Act of Congress *claiming the right to be released*" may move a court to "vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added). There is no doubt that Mayhew is in custody for purposes of § 2255, as he is serving a term of incarceration. And his restitution order is an "aspect of his . . . sentence" that might "comfortably" fall within the meaning of "sentence" under § 2255. *Kaminski v. United States*, 339 F.3d 84, 86 (2d Cir. 2003) (holding that challenges to restitution orders are not cognizable under § 2255). The problem for Mayhew is the phrase "claiming the right to be *released*," because a claim for relief from a restitution order is not fairly

19

"construed as [a] demand[] to be 'released' from custody." *Id.* (emphasis added); *see also Blaik v. United States*, 161 F.3d 1341, 1342 (11th Cir. 1998) ("A reduction in restitution is not a release from custody."). In short, the "plain and unambiguous language of the statute – '[a] prisoner in custody . . . claiming the right to be released' – precludes a restitution challenge." *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003).

Based on this statutory text, virtually all federal courts of appeals to address the issue have concluded that challenges to restitution orders generally are not cognizable under § 2255. *See id.*; *Kaminski*, 339 F.3d at 87; *Blaik*, 161 F.3d at 1342; *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25–26 (1st Cir. 1996).[4] Others have reached the same conclusion with respect to challenges to other monetary aspects of sentences. *See, e.g.*, *United States v. Ross*, 801 F.3d 374, 379–82 (3d Cir. 2015) (special assessment may not be challenged under § 2255). There is one exception: The Sixth Circuit in *Weinberger v. United States*, 268 F.3d 346, 351 n.1 (2001), allowed an ineffective assistance challenge to a restitution order to proceed under § 2255. But neither *Weinberger* nor the prior circuit precedent on which it relied provided any reasoning for this decision, and in our view, it cannot be squared with the plain import of § 2255's text.

---

[4] At least one court has held out the possibility that an exceptionally draconian restitution order "might entail a sufficiently severe restraint on liberty . . . as to amount to a form of custody," so that a challenge to the order could constitute a claim "to be released" within the meaning of § 2255. *See Kaminski*, 339 F.3d at 87. We need not address that possibility here; there is no indication that Mayhew's restitution order would fall within any such exception, and indeed, Mayhew does not argue that the order in his case is so severe that it amounts to "custody."

20

Similarly, the unpublished decision of our court on which Mayhew relies, *United States v. Luessenhop*, 143 F. App'x 528, 531 (4th Cir. 2005) (per curiam), which likewise permitted a § 2255 ineffective assistance challenge to a restitution order, offers no discussion of the issue or analysis of the statutory text, and also conflicts with two other unpublished decisions from our court expressly holding that such claims are *not* cognizable under § 2255. *See United States v. Hudgins*, 201 F. App'x 142, 143 (4th Cir. 2006) (per curiam); *United States v. Coward*, 230 F.3d 1354, 2000 WL 1339540, at *1 (4th Cir. 2000) (unpublished table decision). We of course are not bound by our unpublished decisions, and here, we join the virtual consensus in the federal circuits, echoed by the district court, and hold that by its plain terms § 2255 provides no avenue to challenge a restitution order.[5]

3.

That is not the end of the matter, however, because Mayhew's § 2255 petition challenged not only his restitution order but also his carceral sentence – that is, the length of his prison term. As described above, Mayhew alleges that his counsel performed deficiently when he failed to object to the inclusion in his "restitution calculation" of losses flowing from offenses of which he was not convicted. J.A. 293. And according to

---

[5] Mayhew urges us to treat this limitation as non-jurisdictional and thus waivable. *See Wagner v. United States*, 805 F. App'x 354, 361–63 (6th Cir. 2020) (holding that government could waive § 2255's requirement that petitioner be seeking "release"). But the government properly raised the issue here, so there is no question of waiver. For purposes of this case, then, we need not decide whether § 2255's "release" requirement is jurisdictional; all that matters is that Mayhew's "requested remedy" – the vacatur of his restitution order – "is beyond the relief offered by the statute." *Blaik*, 161 F.3d at 1343 (declining to decide whether this limit on § 2255 is jurisdictional because government did not waive the issue).

21

Mayhew, that same restitution calculation was responsible for a 16-level enhancement of his base offense level under the Sentencing Guidelines, which in turn led to a higher Guidelines sentencing range. Mayhew's ineffective assistance claim, in other words, challenges both his restitution order and his prison term – and the second of those challenges, unlike the first, is cognizable under § 2255. *See Carthorne*, 878 F.3d at 469–70 (reviewing § 2255 ineffective assistance claim alleged to have affected Guidelines sentencing range).

We recognize that in connection with this claim, Mayhew's *pro se* petition expressly asks only for the vacatur of his restitution order. And we do not fault the district court for failing to identify Mayhew's separate claim regarding his sentence; unlike the district court, we have the benefit of appointed and able appellate counsel. But Mayhew's § 2255 petition does refer repeatedly to the alleged effect of the restitution calculation on his Sentencing Guidelines range, and in light of our obligation to construe *pro se* pleadings liberally, that is enough to preserve a distinct and cognizable claim of ineffective assistance of counsel in connection with Mayhew's term of imprisonment. *See Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (explaining obligation to read *pro se* pleadings "liberally and [to] interpret them to raise the strongest arguments they suggest" (internal quotation marks omitted)).[6]

---

[6] That claim also is encompassed by the certificate of appealability we issued in this case. We granted a certificate of appealability on "[w]hether Mayhew's claim that defense counsel rendered ineffective assistance in failing to object to restitution sums to be paid to United Global Investments, Inc., Frank McGrath, and James Perry Fergus is cognizable under § 2255." The answer, as explained above, is that Mayhew's claim is cognizable, but

That leaves us, then, with an ineffective assistance claim that was never addressed by the district court. If Mayhew's restitution order erroneously includes amounts associated with charges of which he was not convicted, and if that restitution error was mirrored in the loss amount used to calculate Mayhew's base offense level under the Sentencing Guidelines, and if that error led to a higher Guidelines range than was appropriate, then Mayhew will have at least some of the makings of an ineffective assistance claim. *See, e.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) (holding that when a defendant is sentenced under an incorrect Guidelines range – even if the actual sentence falls outside that range – the error itself most often will establish a "reasonable probability of a different outcome" absent the error). But those are a lot of "ifs," none of which has been passed on yet, and we think the best course is to remand this claim so that the district court may address it in the first instance. *See Thomas*, 627 F.3d at 540 (remanding *pro se* ineffective assistance claim where district court dismissed without reaching merits).

Even the threshold question, we note – whether Mayhew's restitution order includes amounts beyond what is authorized by the MVRA – is disputed; the government has conceded that some of the losses identified by Mayhew (those associated with United Global Investments) were improperly included, but not others. And while it seems clear that the restitution and Guidelines loss amounts are related – the final figures differed by

---

only in part: It is cognizable to the extent it challenges the length of Mayhew's sentence, but not to the extent it challenges the restitution order entered against him.

23

only $700, a difference expressly accounted for in the PSR – the government argues strenuously that the two are legally distinct and governed by different standards, so that an error in including a given amount in the restitution calculation would not necessarily translate to an error if the same amount were included in the Guidelines loss calculation. But because the district court understood Mayhew's claim to fall entirely outside the parameters of § 2255, it dismissed the claim without addressing these or any other merits questions.

Again, we express no view as to whether Mayhew can prevail on this claim. We also leave to the district court the question of whether a hearing on this claim is required under § 2255(b), or whether the record as it stands "conclusively show[s]" that Mayhew is not entitled to relief. 28 U.S.C. § 2255(b). Consistent with the "principle that the district court should have the first opportunity to perform the applicable analysis," *Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019), we remand so that the district court may consider Mayhew's claim that his counsel's failure to object to the restitution calculation resulted in an improperly enhanced sentence of imprisonment, in violation of his Sixth Amendment right to the effective assistance of counsel.

## III.

For the foregoing reasons, the judgment of the district court is affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

24