**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-7190

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AHMAD SAYED HASHIMI, a/k/a Jimmy, a/k/a Jimmy Jimski, a/k/a Jamshaid,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Retired District Judge. (1:16-cr-00135-LO-1; 1:20-cv-01148-LO)

Argued: May 9, 2024                                      Decided: August 2, 2024

Before WYNN, HARRIS, and HEYTENS, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Wynn and Judge Heytens joined.

**ARGUED:** Zachariah Alexander Spurrier, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant. Philip Samuel Alito, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant. Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

A federal jury convicted Ahmad Hashimi of four criminal charges after his lawyer conceded guilt on two. Hashimi says his lawyer made the concession against his wishes and therefore violated the Sixth Amendment autonomy right established in *McCoy v. Louisiana*, 584 U.S. 414 (2018). The district court denied Hashimi's 28 U.S.C. § 2255 motion without an evidentiary hearing. But that step is appropriate only where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), and the record here does not make that conclusive showing. Accordingly, we vacate the denial of Hashimi's § 2255 motion and remand for further factual development.

## I.

### A.

Ahmad Hashimi was indicted in the Eastern District of Virginia on four counts, two drug-related and two involving violence. According to the government, Hashimi ran a drug-distribution conspiracy and, in related activity, assaulted and kidnapped his ex-girlfriend.

Hashimi and his court-appointed lawyer Bruce Johnson had a rocky relationship from the start. Hashimi repeatedly complained about Johnson in written and oral submissions to the court, generally focused on poor communication that Hashimi believed prevented him from obtaining a plea deal. The district court rebuffed Hashimi's attempts

2

to have Johnson replaced, accepting Johnson's representations that Hashimi had been presented with numerous plea offers and had rejected them all of his own volition.

Hashimi proceeded to trial. The government put on several witnesses, including Hashimi's ex-girlfriend, who testified that Hashimi choked her during a fight over her infidelity and later kidnapped her to reclaim drugs he believed she had stolen from him. Other witnesses generally corroborated this account and offered additional testimony related to the drug conspiracy.

At the close of evidence and out of the presence of the jury, attorney Johnson again raised the possibility of a plea, asking the court if Hashimi could "tender a plea of guilt" to the "kidnapping and interstate domestic violence" charges while putting the drug conspiracy charges to the jury. J.A. 601-02. Johnson's plan, apparently, was to argue for lenience at sentencing based on Hashimi's purported "acceptance of responsibility" on the assault and kidnapping counts. J.A. 602. The government objected, saying that it would consent to Hashimi pleading to all or none, but not some, of the charges against him.

The court sided with the government, rejected the putative plea, and put the whole case to the jury.[1] Accordingly, it never conducted a plea colloquy and Hashimi never confirmed or denied his desire to plead guilty to any of the charges against him.

---

[1] The trial transcript does not make clear the legal basis for denying Hashimi the right to plead guilty to two of the charges against him. We are not aware of a ground on which the government could object to the proposed guilty plea or on which the district court could refuse such a plea, and at oral argument, the government forthrightly conceded that it, too, was unable to identify any relevant legal authority. But Hashimi does not challenge this aspect of his trial and so we do not address it further.

3

His plea gambit having failed, Johnson took another tack. In his closing argument to the jury, Johnson made a critical concession that had not yet featured in the trial: that Hashimi had, in fact, assaulted and kidnapped his ex-girlfriend.

> The last few days I've done very little, if no questioning relating to the kidnap and domestic violence. Shame on Mr. Hashimi, shame on him. I am sure he was humiliated that [his ex-girlfriend] was cheating on him behind his back, I am sure, but that doesn't excuse what he did. And if he were allowed to, he would accept responsibility for that right in front of you.

J.A. 649.

Those two counts conceded, Johnson devoted his efforts to contesting the drug counts. It did not work. The jury was persuaded by Johnson's concession but not his defense, and it found Hashimi guilty on all counts. The court sentenced Hashimi to a total of 300 months' (25 years') imprisonment.

**B.**

This is our third encounter with Hashimi's case. Hashimi first appealed directly from his conviction and sentence and we affirmed. *See United States v. Hashimi*, 718 F. App'x 178 (4th Cir. 2018). In that first appeal, as relevant here, Hashimi argued that Johnson provided ineffective assistance under the Sixth Amendment when "he conceded Hashimi's guilt on Counts 3 and 4" – the violence charges – "during closing argument without Hashimi's consent." *Id.* at 181. We disagreed, reasoning that because the concession of guilt "may have been a strategic decision, counsel's ineffectiveness does not appear on the face of the record and thus Hashimi should raise this claim, if at all, in a 28 U.S.C. § 2255 motion." *Id.*

4

Less than five months later, the Supreme Court called that ruling into question, "shift[ing] the balance of power between counsel and client" in a way that would bear on Hashimi's case. *Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020). In *McCoy v. Louisiana*, the Supreme Court "added a new item" to the list of "fundamental decisions reserved to the client," *Kellogg-Roe v. Gerry*, 19 F.4th 21, 26 (1st Cir. 2021): the decision to maintain innocence at trial. *See McCoy v. Louisiana*, 584 U.S. 414, 422-24 (2018). Conceding guilt before a jury, the Court explained, is not a "strategic choice[]" for counsel to make, subject to the familiar *Strickland* standard for ineffective assistance. *Id.* at 422, 426-28; *see generally Strickland v. Washington*, 466 U.S. 668 (1984). Instead, the defendant has a Sixth Amendment-secured autonomy right to make that choice himself, and a violation of that right ranks as structural error calling for reversal. *McCoy*, 584 U.S. at 426-28.

After it decided the *McCoy* case, the Supreme Court granted Hashimi's petition for writ of certiorari, vacated our decision, and remanded for reconsideration under *McCoy*. *Hashimi v. United States*, 139 S. Ct. 377 (2018). On remand, we again affirmed Hashimi's conviction and sentence, but this time with a caveat. *United States v. Hashimi*, 768 F. App'x 159 (4th Cir. 2019). The record on direct appeal in this case, we observed, was silent as to "whether Hashimi consented or objected to his counsel's concession of guilt." *Id.* at 163. So on the record as it then stood, we could not say that Hashimi had been deprived of his *McCoy* autonomy right. *Id.* But we invited Hashimi to help us assess his claim on a fuller record: "[I]f there are facts not currently in the record before us that call [our] conclusion into question, Hashimi remains free to raise this claim in a 28 U.S.C. § 2255 motion." *Id.*

5

Hashimi accepted the invitation. He filed a § 2255 motion in district court, arguing, as relevant here, that his lawyer violated the principle articulated in *McCoy* when he conceded Hashimi's guilt on two counts against Hashimi's wishes. With his motion, Hashimi presented to the district court two pieces of evidence that he hoped would fill out the record for *McCoy* purposes. First was a sworn declaration by Hashimi with two relevant statements. One asserted that Johnson had failed to consult with him about his case: "At no point in advance of trial, and only minimally during trial, did my attorney consult with me about the details of my case or discuss with me a theory of my defense." J.A. 781. The other alleged that Johnson had failed to obtain Hashimi's consent to concede: "At no time before or during the trial in this matter did I give my attorney . . . permission to concede, during his closing argument to the jury, my guilt on any counts of the Indictment." J.A. 780.

Second was a page of handwritten notes passed between Hashimi and Johnson. In the notes, exchanged during Hashimi's ex-girlfriend's trial testimony, Hashimi appears to express disbelief at the testimony and encourages Johnson to try to impeach it:

> *Hashimi*: It's funny how [the ex-girlfriend] remembers everything to the teeth precoached.
> *Johnson*: One of the reasons I recommended plea to you of [illegible] count. You now have unlimited exposure.
> *Hashimi*: I never met her nor know Sharon we need her to testify.
> …
> *Johnson*: I don't understand why you would take the risk.
> *Hashimi*: She [is] clearly lying we need to prove it with Sharon.
> *Johnson*: C'mon Hashimi c'mon dude. You really think jury is going to totally disbelieve her.

6

J.A. 839.  According to Hashimi, this exchange illustrates a persistent divergence between himself and his lawyer as to whether to admit guilt:  While Johnson continued to press Hashimi to admit or concede guilt, Hashimi steadfastly searched for ways to convince the jury of his innocence.

## C.

The district court denied Hashimi's § 2255 motion.  *United States v. Hashimi*, No. 1:16-cr-00135-LO (E.D. Va. Aug. 25, 2022), *reproduced at* J.A. 840-62.[2]  In considering the *McCoy* issue, the court juxtaposed that case with *Florida v. Nixon*, 543 U.S. 175 (2004), an earlier case that also involved a concession of guilt at trial.  In *McCoy*, the district court reasoned, the defendant "vehemently protested his attorney's decision to concede guilt . . . at every opportunity."  J.A. 845.  By contrast, *Nixon* held a guilt concession acceptable where counsel had explained his plan to the defendant several times and the defendant "made no attempt to respond, object, or make inquiries."  J.A. 846.  This case, the court concluded, fell on the *Nixon* side of the line, because Hashimi's declaration said only that he did not give permission for a concession of guilt – not that he had expressly *denied* that permission.  *Id.*  Without evidence that Hashimi had verbalized his desire to maintain innocence, the district court held, there could be no *McCoy* violation.

---

[2] Because the district court's unpublished order is not available via a publicly accessible legal database, we cite to the version contained in the joint appendix on appeal.

7

The district court rejected other claims by Hashimi not at issue here and denied Hashimi's § 2255 petition without holding an evidentiary hearing. It also declined to issue a certificate of appealability. J.A. 861-62.

Hashimi timely appealed and we granted a certificate of appealability on the *McCoy* issue, finding that "Hashimi has demonstrated that reasonable jurists could conclude that counsel conceded guilt against his wishes, in violation of *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018)." J.A. 865.

## II.

On appeal from the denial of a 28 U.S.C. § 2255 motion, we review the district court's legal conclusions de novo. *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). Where, as here, the district court denies a § 2255 motion without an evidentiary hearing, we treat the district court's decision like a grant of summary judgment, which means that we view the facts in the light most favorable to the § 2255 movant – Hashimi – and draw reasonable inferences in his favor. *Id.*[3] Viewing the record in that light, a district court abuses its discretion if it denies § 2255 relief without holding an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that [Hashimi]

---

[3] We have been less than perfectly consistent on this point, analogizing a denial of § 2255 relief without a hearing both to a grant of summary judgment, *see, e.g.*, *Mayhew*, 995 F.3d at 176, and to a grant of a motion to dismiss, *see, e.g.*, *United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023). Because we conclude that an evidentiary hearing is necessary in this case even under the harder-to-satisfy summary judgment standard, we need not resolve which is the more perfect analogy.

8

is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021). Under this standard, we conclude that Hashimi is entitled to an evidentiary hearing at which he may try to substantiate his *McCoy* claim.

## A.

The district court properly identified the Supreme Court's decisions in *McCoy* and *Nixon* as the starting point for analysis of Hashimi's claim. We begin by laying out the principles that flow from those decisions. And we note at the outset that the parties in this case do not meaningfully dispute these background principles, focusing instead on how they apply to the facts of Hashimi's case – or, more properly, to what we know of those facts at this point in the proceedings.

The Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense." *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979). To that end, the Supreme Court has reserved for a criminal defendant the right to make "certain fundamental decisions" about his defense no matter how strongly his lawyer may disagree. *United States v. Roof*, 10 F.4th 314, 351 (4th Cir. 2021). This is a narrow class of decisions; "trial management" remains the "lawyer's province," and counsel need not seek or obtain consent before deciding, for instance, "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy*, 584 U.S. at 422 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)); *see also Roof*, 10 F.4th at 351. But some decisions are so fundamental that they are "reserved for the client," including "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy*, 584 U.S. at 422.

9

*McCoy* added to that "latter category" the decision whether to maintain innocence or concede guilt at trial. *Id.*; *see also Kellogg-Roe*, 19 F.4th at 26. That decision, the Supreme Court explained, is not a "strategic choice[] about how best to *achieve* a client's objectives" but instead a "choice[] about what the client's objectives in fact *are*." *McCoy*, 584 U.S. at 422. It follows, the Court held, that a defendant has a Sixth Amendment autonomy right to make the choice for himself. *Id.* at 426-27. And, critically, because counsel's strategic decisions and competence are not at issue, a violation of that autonomy right is not subject to the *Strickland* standard for ineffective assistance, which requires a showing of prejudice. *Id.* at 426 (citing *Strickland*, 466 U.S. at 692). Instead, a violation of the Sixth Amendment autonomy right is a structural error, entitling the defendant to a new trial without the need to show prejudice, because the error both negates the defendant's "right to make [] fundamental choices about his own defense" and impacts the trial in ways that are "immeasurable." *Id.* at 427-28.

To protect a client's right to decide for himself whether to concede guilt to a jury, *McCoy* explained, defense counsel is obliged to do two things. First, *McCoy* contemplates a consultation between defense counsel and client, in which defense counsel may try to persuade a client that conceding guilt is or has become the best course. *Id.* at 423-24. And second, if the client expresses a preference in response to that consultation, counsel may not "override" it and must instead abide by it. *Id.* at 424. We emphasize, again, that the parties here agree on these twin obligations; at oral argument, the government clarified that it reads *McCoy* as requiring defense counsel both to consult with a defendant before conceding guilt and to honor any objection raised by the defendant.

10

But what happens if defense counsel, convinced that he has before him the rare case in which conceding guilt at trial is the best path forward, consults with his client and receives no response – neither approval nor objection? *McCoy* answers that question by reference to its earlier-decided *Nixon* case: If "a client declines to participate in his defense," then the choice defaults to the attorney, who "may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest." *McCoy*, 584 U.S. at 424 (discussing *Nixon*, 543 U.S. at 181).

Like *McCoy*, *Nixon* involved a capital defendant facing overwhelming evidence of guilt. *See Nixon*, 543 U.S. at 180-82. And as in *McCoy*, defense counsel determined that "the most promising means to avert a sentence of death" was to concede guilt at the guilt phase of trial and then hope for mercy at the sentencing phase. *Id.* at 178, 190-91. But unlike the defendant in *McCoy*, who vocally opposed his counsel's "assertion of his guilt at every opportunity," 584 U.S. at 424, the defendant in *Nixon* took no position on his counsel's planned concession of guilt, refusing to engage at all in his defense: Counsel "attempted to explain this [concession] strategy to Nixon at least three times," and each time, Nixon "was generally unresponsive" and "never verbally approved or protested" the concession. *Nixon*, 543 U.S. at 181; *McCoy*, 584 U.S. at 424. In those circumstances, the Court held, the client's effective abdication of his right to choose allowed counsel to make the decision instead. *Nixon*, 543 U.S. at 192. But essential to the *Nixon* Court's holding were the lawyer's efforts to leave the decision with the client: "When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule

11

demanding the defendant's explicit consent." *Id.*; *see McCoy*, 584 U.S. at 424 (discussing *Nixon*).

In short, *McCoy* and *Nixon* leave us with a reasonably straightforward rule. If defense counsel assesses conceding guilt to a jury as the wisest path, he has two obligations: He must consult with his client, and, if the client engages, he may not "steer the ship the other way." *McCoy*, 584 U.S. at 424. If the lawyer violates these rules and thus "usurp[s] control of an issue within [the defendant's] sole prerogative," the remedy is a new trial, regardless of whether prejudice can be demonstrated. *Id.* at 426-27.

## B.

Against this standard, we conclude that the district court erred in denying § 2255 relief on Hashimi's *McCoy* claim without first holding an evidentiary hearing. The record in this case, taken in the light most favorable to Hashimi, gives rise to a reasonable inference that Hashimi's court-appointed lawyer, Johnson, failed to meet the obligations imposed by *McCoy* before conceding Hashimi's guilt on two charges in his closing argument to the jury. And nothing in the record conclusively rebuts this possibility. *See Mayhew*, 995 F.3d at 176. That is enough to entitle Hashimi to an evidentiary hearing into a potential violation of the Sixth Amendment autonomy right recognized in *McCoy*.

When we last considered Hashimi's *McCoy* claim, recall, we had only the direct appeal record before us, with no indication as to whether Hashimi "consented or objected to his counsel's concession of guilt." *Hashimi*, 768 F. App'x at 163. But Hashimi supplemented that record by submitting to the district court, along with his § 2255 petition, an affidavit stating that he did *not* consent to the concession: "At no time before or during

12

the trial . . . did I give my attorney, Bruce A. Johnson, Jr., permission to concede, during his closing argument to the jury, my guilt on any count[.]" J.A. 780. In this posture, we take Hashimi's allegation as true. *See Mayhew*, 995 F.3d at 176. So for present purposes, we must rule out what would be the most straightforward defense of Johnson's concession to the jury: that Johnson first consulted with his client and obtained Hashimi's consent. *See McCoy*, 584 U.S. at 424.

The district court properly assumed that Hashimi had not consented to Johnson's concession of guilt. But Hashimi still could not make out a claim under *McCoy*, the district court reasoned, because he did not aver that he expressly *objected* to the concession, either. J.A. 846. Absent evidence that Hashimi "expressly told his lawyer *not* to concede his guilt during closing statements," the district court concluded, his case was governed by *Nixon*, not *McCoy*, and Hashimi's claim could be rejected without need for further development of the facts. *Id.* For two principal reasons, we disagree.

1.

First, it is true, as the district court reasoned, that the Supreme Court approved a concession of guilt in *Nixon* where the defendant did not consent but also did not object to his lawyer's plan to concede – a scenario that matched, in the court's view, with the contours of Hashimi's affidavit. But that analysis overlooks a critical element of *Nixon*: In that case, the defendant neither consented nor objected to a concession of guilt *after his lawyer consulted with him*, three times, in a futile effort to get his input and leave the choice to concede guilt where it belonged, with the client. Under those circumstances – where attempts to consult are stonewalled and the client refuses to make the concession decision

13

himself – counsel is free to fall back on his own professional judgment. *See Nixon*, 543 U.S. at 181-82; *McCoy*, 584 U.S. at 424.

But that rule does not apply when a lawyer fails his initial duty of consultation, conceding guilt to a jury without first consulting with his client and seeking the client's views. *McCoy* does not impose on criminal defendants who have chosen to go to trial a prophylactic (and mostly redundant) obligation to notify their lawyers that their plan for trial is not to concede guilt to the jury. Instead, and as the government concedes, *McCoy* puts the obligation on the lawyer, requiring that before counsel may make a concession of guilt to the jury, he must discuss his plan with the defendant. *McCoy*, 584 U.S. at 424. Put differently, *McCoy* is not satisfied if a defendant fails to object because he was never given the *opportunity* to object. Were it otherwise, this loophole would swallow the *McCoy* rule, transferring the concession decision from client to lawyer so long as the lawyer never asks the client's permission.[4]

And on this record, viewing the record facts in the light most favorable to Hashimi and drawing reasonable inferences in his favor, we cannot say "conclusively" that Hashimi's lawyer satisfied his *McCoy* obligation to consult with his client before

---

[4] Of course, a client could, as McCoy himself did, stand up in open court and disavow his lawyer's concession. *See McCoy*, 584 U.S. at 419. But we do not craft legal rules to encourage clients to speak out of turn in court, and, had Hashimi done so, the district court doubtless would have responded the way the trial court responded to McCoy: with an admonition that the court "would not permit 'any other outbursts.'" *Id.*; *cf. Jordan v. Hargett*, 34 F.3d 310, 314 (5th Cir. 1994) (calling it "inappropriate" to require a defendant "personally to make . . . a record" of a dispute between him and his lawyer by "speak[ing] out of turn" in court (internal quotation marks omitted)).

14

conceding guilt to the jury. *See* 28 U.S.C. § 2255(b); *Mayhew*, 995 F.3d at 178. Instead, we have Hashimi's affidavit, which we credit for present purposes, asserting a general failure to consult on the part of his attorney, J.A. 780, and a long record of a significant communicative breakdown between Johnson and his client, as Hashimi complained to the court at least three times of "mistrust" between them. J.A. 82-83; *see also* J.A. 19, 32, 78. That evidence does not, of course, conclusively prove that there was no consultation. But if we draw all inferences in Hashimi's favor, it is enough to raise significant questions.

Those questions multiply when we consider the government's theory for how Hashimi's affidavit can be squared with the rule of *McCoy*. As the government recognizes, under *McCoy*, Johnson was permitted to concede Hashimi's guilt to the jury only if Hashimi was "informed of the plan" and then consented or "neither consent[ed] nor object[ed]," as in *Nixon*. Appellee's Br. at 31. The consent option is out for now, the government understands, given Hashimi's affidavit. So the government goes with the *Nixon* option: that at some point during the trial – perhaps at the close of evidence, along with the exploration of a guilty plea to assault and kidnapping – Johnson consulted with Hashimi about conceding guilt to the jury and was met with a *Nixon*-like silence, with Hashimi refusing to offer a view either way on the planned concession.

But on the present record, that is pure speculation. Most obviously, Johnson did not put the hypothesized consultation and client non-responsiveness on the record, bringing it to the court's attention and laying the groundwork for a concession of guilt under *Nixon*.[5]

_____

[5] We have no occasion to decide whether an on-the-record colloquy with the court is a necessary predicate to a lawyer's concession of guilt at trial. *See McCoy*, 584 U.S. at

Nor did the government submit in the § 2255 proceedings a declaration from Johnson attesting to the government's scenario. *See United States v. Pressley*, 990 F.3d 383, 389-90 (4th Cir. 2021) (requiring evidentiary hearing in part because counsel did not submit affidavit outlining his decision-making process). And what we can glean from the course of proceedings depicts only a highly engaged defendant bent on maintaining his innocence on all counts. Per the trial court, Hashimi repeatedly rejected plea offers and instead "decided to go to trial," J.A. 694, exercising his "[a]utonomy to decide that the objective of the defense is to assert innocence." *McCoy*, 584 U.S. at 422. And the trial notes submitted by Hashimi with his § 2255 petition suggest that he remained actively engaged in his defense and eager to maintain his innocence notwithstanding his lawyer's views, pushing Johnson to challenge the credibility of his ex-girlfriend's testimony. Under all the circumstances, Hashimi does not *seem* like a defendant who would sit mute if counsel shared with him a plan to give up half his case at the close of evidence.

Nor are we persuaded, as the district court suggested, that Hashimi's seeming interest in pleading guilty to the assault and kidnapping charges against him at the close of

---

422 (grouping defendant's autonomy to decide whether to concede guilt at trial with right to decide "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal"). But defense counsel planning to concede their client's guilt at trial might be well advised, under *McCoy*, to put their consultations with their clients on the record. We of course have no desire to add to the burdens of trial courts in conducting criminal trials. But we trust it will be the rare case, particularly outside the capital-case context of *McCoy* and *Nixon*, in which defense counsel will think it advisable to concede a client's guilt to the jury. *See McCoy*, 584 U.S. at 433 (Alito, J., dissenting) (explaining that it is "hard to imagine" a non-capital case in which a competent attorney would choose to concede his client's guilt at trial).

16

evidence is enough to demonstrate a changed mind as to the "objective of the defense," *McCoy*, 584 U.S. at 422, and a willingness to concede guilt on those counts to the jury. *See* J.A. 846 (noting that Hashimi "attempted to enter a guilty plea" on the two charges "in exchange for a reduction in the sentencing guidelines based on acceptance of responsibility"). We can assume that Johnson acted with Hashimi's consent in raising the possibility of pleading guilty at the close of evidence. Even so, consent to plead guilty is different in kind from consent to admit guilt to a jury; a defendant might well be interested in pleading guilty but not in assuring a guilty verdict from a jury and the accompanying opprobrium, and the Sixth Amendment reserves to him the right to make that choice. *Cf. McCoy*, 584 U.S. at 419 n.2 ("Encouraging a guilty plea pretrial, of course, is not equivalent to imparting to a defendant counsel's strategic determination to concede guilt should trial occur.").

To be clear, our point here is not that the record conclusively rebuts the government's theory. The possibility remains that Johnson did indeed consult with Hashimi before conceding his client's guilt to the jury, consistent with *McCoy*, and that Hashimi sat silent à la *Nixon*. And evidence of Hashimi's apparent interest in pleading guilty to the counts in question may well be relevant to that inquiry. But the record before us, viewed in the light most favorable to Hashimi, is simply too "murky" on this point to allow for a decision without further factual development, and an evidentiary hearing is therefore required. *See Runyon*, 994 F.3d at 208 (requiring evidentiary hearing to clarify "murky" evidence regarding counsel's strategic considerations).

2.

We have a second disagreement with the district court's analysis. In denying relief under *McCoy* without a hearing, the court relied critically on the fact that Hashimi's affidavit says that Hashimi never gave his attorney permission to concede, but not that he expressly *denied* such permission. J.A. 846. For the reasons given above, the record as it stands yields a reasonable inference that Hashimi did not give his permission because he was never asked, in violation of *McCoy*'s consultation rule. But we think Hashimi's affidavit leaves open a second possibility, as well: that Hashimi *did* expressly deny permission for the concession, and that Johnson violated *McCoy*'s core command by failing to honor Hashimi's expressed wish to maintain his innocence.

Hashimi's affidavit says as follows: "At no time before or during the trial in this matter did I give my attorney, Bruce A. Johnson, Jr., permission to concede, during his closing argument to the jury, my guilt on any counts of the Indictment." J.A. 780. That statement, to be sure, can be read as the district court and government read it, where Hashimi, informed of Johnson's plan to concede guilt, neither consents nor objects – the *Nixon* scenario, under which the client defaults his choice and the authority to concede guilt falls to the attorney. But Hashimi's affidavit is also consistent with a different version of events, in which Hashimi *does* expressly tell Johnson not to concede guilt and then describes that in his affidavit, as one might, as having not given permission for the concession when asked. We do not know, in other words, whether Hashimi's affidavit is worded cleverly, to avoid a fact unfavorable to Hashimi (that he never expressly objected), or poorly, so that it inadvertently omits a fact favorable to him (that he did expressly

18

object).  But given the posture, in which we view the evidence in the light most favorable to Hashimi, we see no reason to commit at this juncture to the former interpretation over the latter.

Again, we emphasize that the record as it stands today would admit of a scenario in which Johnson carefully adhered to his obligations under *McCoy* – notwithstanding that *McCoy* had yet to be decided – consulting with Hashimi about the wisdom of conceding guilt to the assault and kidnapping charges before the jury and receiving neither approval nor disapproval from his client.  An evidentiary hearing may well bear out the government's scenario, in other words – or even establish, contrary to Hashimi's affidavit, that Hashimi in fact expressly *approved* Johnson's concession of guilt.  But we draw our inferences here in Hashimi's favor, not the government's, and so viewed, the record remains decidedly "murky" as to whether Johnson consulted with Hashimi about conceding guilt and, if he did, whether and how exactly Hashimi responded.  *See Runyon*, 994 F.3d at 208; *United States v. Poindexter*, 492 F.3d 263, 272 (4th Cir. 2007) ("[W]hen a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed.").  Under these circumstances, where the record does not "conclusively show" that Hashimi cannot prevail on his *McCoy* claim, *see* 28 U.S.C. § 2255(b), this case must return to the district court for an evidentiary hearing.

19

## III.

For the reasons given above, the judgment of the district court is vacated and the case remanded for proceedings consistent with this opinion.

*VACATED AND REMANDED*