**Filed**
Supreme Court of Guam, Clerk of Court



# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## BRIAN JASON MARTINEZ
## (aka Brenda Joyce Martinez; aka Joyce),
Defendant-Appellant.

Supreme Court Case No. CRA24-026
Superior Court Case No. CF0278-24

## OPINION

## Cite as: 2025 Guam 17

Appeal from the Superior Court of Guam
Argued and submitted on October 20, 2025
Hagåtña, Guam

Appearing for Defendant-Appellant:
Leevin Taitano Camacho, *Esq.*
Camacho & Taitano LLP
102 E. Chalan Santo Papa, Juan Pablo Dos
Suite 101
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Emily L.A. Rees, *Esq.* (briefed)
George Raymond Kolb, *Esq.* (argued)
Assistant Attorneys General
Office of the Attorney General
Appellate & Writing Division
134 W. Soledad Ave., Ste. 412
Hagåtña, GU 96910

**E-Received**
12/30/2025 3:43:22 PM


BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]     Defendant-Appellant Brian Jason Martinez *aka* Brenda Joyce Martinez appeals a judgment of conviction stemming from a police chase, crash, and subsequent arrest. Martinez was charged with theft of an automobile, possession of a Schedule II controlled substance, eluding a police officer, resisting arrest, disorderly conduct, and reckless driving with property damage. The trial court granted Martinez's motion for acquittal on the disorderly conduct charge.

[2]     At trial, Martinez's attorney conceded that the prosecution had his client "dead to rights" on all the remaining charges, except for theft of an automobile. Transcript ("Tr.") at 24 (Cont'd Jury Trial, July 5, 2024). Throughout the trial, Martinez's attorney conceded guilt on the lesser charges but implored the jury to acquit on the theft charge. The jury rendered a verdict of not guilty on the theft of an automobile charge and guilty verdicts on the remaining charges.

[3]     Martinez argues that her Sixth Amendment rights were violated under the U.S. Supreme Court's landmark *McCoy* decision, where the Court held that "counsel may not admit her client's guilt of a charged crime over the client's *intransigent objection* to that admission." *McCoy v. Louisiana*, 584 U.S. 414, 426 (2018) (emphasis added). Martinez argues her rights were violated because "[t]here is no indication in the record that Martinez authorized counsel to admit to the offenses, nor does the record reflect any colloquy or waiver addressing this issue." Appellant's Br. at 6-7 (June 24, 2025). The only claim Martinez raises on appeal is that her Sixth Amendment-secured autonomy was violated by trial counsel's concession of guilt (a "*McCoy* claim").

[4]     Previously, Martinez filed a motion in this court seeking a limited remand to develop the factual record on her *McCoy* claim, which we denied. We determined that "[t]o raise a *McCoy* claim on direct appeal, the client's objection to a concession of guilt must appear somewhere in

the record." Order at 3 (June 4, 2025). We explained: "If the record is silent on whether the client objected, it will be more prudent to raise an ineffective assistance of counsel claim in a habeas proceeding based on *McCoy*." *Id.* We instructed that "[i]f Martinez's objection appears in the record, a *McCoy* claim can be raised in the Appellant's Opening Brief based on what the record shows. If there is no objection on the record, as implied by Martinez's motion, the claim should be made in a collateral proceeding." *Id.* at 4. Despite this court's instructions, the sole issue Martinez raises on appeal is a *McCoy* claim, along with a concession that the record is silent on the issue. In essence, Martinez asks us to revisit our decision. The People request that this appeal be dismissed for failure to comply with this court's order.

[5]     Because the record is silent on whether trial counsel consulted with Martinez about conceding guilt or whether Martinez consented to such a concession, we cannot rule on the sole claim raised on appeal. We affirm without prejudice to Martinez's right to raise the *McCoy* issue in a habeas corpus proceeding, where an adequate factual record may be developed. We also appoint Attorney Leevin T. Camacho as Martinez's habeas counsel.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. Police chase an allegedly stolen truck

[6]     Justin Santos called 911 reporting that his truck had been stolen by Martinez and that he was following it through Mangilao. Police responded, and a high-speed chase ensued, with the truck driving recklessly across the island. Eventually, the driver of the truck abandoned it after colliding with multiple police cars in front of the Sumay Payless. The driver successfully escaped on foot into the jungle. None of the officers involved in the chase or present at the crash scene

---

[1] This Opinion supersedes this court's order resolving Martinez's appeal and appointing habeas counsel. *See generally* Order (Nov. 7, 2025). This Opinion does not affect that appointment of counsel.

could positively identify the driver; instead, they provided only general descriptions of the suspect. Tr. at 134 (Jury Trial Day 1, Feb. 27, 2025 (testifying they could only describe driver as having "red curly hair"); *see also id.* at 143 ("I saw a female wearing a brown shirt, dark or black shorts, with curly long reddish-brown hair.").

### 2. Martinez is arrested

[7]      The next day, a police officer was driving through Mangilao when the officer saw a person fitting Martinez's description. The officer testified the person had scratches on their arms and legs. The officer talked to the person, who gave a fake name. Dispatch advised the officer that Martinez had a distinctive tattoo; but the individual refused to allow the officer to search for it. The individual then shouted, "I don't have to f**kin' say shit to you guys," to which the officer responded that she was under arrest. *Id.* at 115. When the individual attempted to run, the officer's partner tackled her to the ground. After securing the individual, the police secured her belongings, including a black purse. The officer testified that he saw a glass pipe in the purse. He ultimately seized the pipe and a baggie of methamphetamine. After being arrested, the individual was positively identified as Martinez and transported to the police station. Martinez allegedly admitted during a custodial interrogation that she was driving the truck the day before. During the interrogation, Martinez allegedly explained that she received the truck from a third party after Santos transferred it to that person to satisfy a debt.

### B. Procedural History

[8]      Martinez was charged with Theft of an Automobile (As a Second Degree Felony), Eluding a Police Officer (As a Misdemeanor), and Reckless Driving with Property Damage (As a Petty Misdemeanor) arising from the police chase. Martinez was also charged with Possession of a Schedule II Controlled Substance (As a Third Degree Felony), Resisting Arrest (As a

Misdemeanor), and Disorderly Conduct (As a Petty Misdemeanor) stemming from the police encounter the next day.

### 1. At trial, defense counsel pursues acquittal on theft while admitting guilt on most other charges

[9]     During opening statements, Martinez's counsel conceded guilt on the "lesser" charges:

> So stuff doesn't add up. . . . I'm going to ask you to use your common sense. . . . And we believe that there are some Charges that [Martinez] admits to, but there are Charges that [Martinez] doesn't admit to, and the government does not have what it takes to bring the jury to a conclusion beyond a reasonable doubt that [Martinez is] guilty. So we will ask you to find [Martinez] not guilty on most of the Charges -- the most serious Charges -- and [Martinez has] already admitted to the lesser Charges.

Tr. at 100-01 (Jury Trial Day 1). Although counsel emphasized that "there's a lot of things that don't add up," the only discrepancies he raised related to felony theft. *Id.* at 99-100. He did not address the felony drug possession charge in his opening statement.

[10]    When cross-examining prosecution witnesses, defense counsel highlighted Martinez's admission during custodial interrogation that she was driving the truck. Defense counsel also elicited that Martinez admitted to being high while driving the truck. However, defense counsel also elicited that Martinez apologized for crashing into the police vehicle, that the brakes in the truck did not work, and that Martinez did not admit to owning the seized drugs and paraphernalia. Defense counsel also attacked the details Santos gave to police when he reported that Martinez stole the truck. On cross-examination, counsel got one officer to admit it was "quite possible" that Santos had "concocted a story" to accuse Martinez. *See id.* at 179. Defense counsel also highlighted that the police did not follow up on Martinez's claim that she received the truck from a third party.

[11]    After the People rested their case, defense counsel moved for a judgment of acquittal on the charges of disorderly conduct and theft of an automobile. Trial counsel stated he could not

make the same motion in good faith on the reckless driving charge and acknowledged there was also sufficient evidence of resisting arrest, eluding a police officer, and drug possession. The trial court ultimately denied the motion on the theft charge but granted it on disorderly conduct.

[12]    In closing arguments, defense counsel conceded Martinez's guilt on all remaining charges except theft: "So I'm not going to talk in too much detail about the chase, or the reckless driving, or the resisting arrest. Those are, you know, pretty much a foregone conclusion." Tr. at 21 (Cont'd Jury Trial). Defense counsel emphasized that "[t]he reason why we're here today, folks, is because of this alleged theft of a motor vehicle." *Id.* He also argued that police failed to investigate Martinez's claim that the truck had been given as payment for a debt and asserted that Santos lied when providing Martinez's name to police. Defense counsel concluded that the reason Martinez did not stop the truck was not that it was stolen, but because Martinez "was high" and "probably had drugs." *Id.* at 24.

[13]    The jury returned verdicts of not guilty on the theft of an automobile charge and guilty on the remaining charges. Martinez received a sentence of three years for possession and the maximum sentence of one year for the two misdemeanor charges of eluding an officer and resisting arrest—both to run consecutively—for a total of five years.[2] Upon successful completion of the Residential Substance Abuse Treatment Program, two years of the sentence could be suspended. Additionally, a $3,000 fine was imposed, payable into the drug treatment fund.

## C.  Proceedings on Appeal: This Court Denies Limited Remand

[14]    Martinez timely appealed. Martinez moved this court for limited remand, asking to develop the factual record on a potential *McCoy* claim for concession of guilt without consent. We denied the motion, determining that "[t]o raise a *McCoy* claim on direct appeal, the client's

---

[2] The trial court imposed no sentence for reckless driving with property damage as a petty misdemeanor.

objection to a concession of guilt must appear somewhere in the record." Order at 3 (June 4, 2025). We explained that "[i]f the record is silent on whether the client objected, it will be more prudent to raise an ineffective assistance of counsel claim in a habeas proceeding based on *McCoy*." *Id.* We instructed that "[i]f Martinez's objection appears in the record, a *McCoy* claim can be raised in the Appellant's Opening Brief based on what the record shows. If there is no objection on the record, as implied by Martinez's motion, the claim should be made in a collateral proceeding." *Id.* at 4.

## II. JURISDICTION

[15]     This court has jurisdiction over a criminal appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-59 (2025)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[16]     "An alleged violation of the Sixth Amendment that has been preserved below is reviewed *de novo*." *People v. Mendiola*, 2023 Guam 12 ¶ 17.

## IV. ANALYSIS

### A. Martinez Makes No Showing Why This Court Should Revisit Its Decision Declining to Hear a *McCoy* Claim on Direct Appeal When the Record Is Silent

[17]     Despite this court's order, the sole issue Martinez raises on appeal is a *McCoy* claim, along with a concession that the record is silent on the issue. Martinez essentially asks this court to revisit its decision, but her arguments are inadequately supported by authority. *See* Guam R. App. P. 13(a)(9)(A). Some pre-*McCoy* state supreme court decisions have permitted review of this type of claim on direct appeal following a limited remand, but those cases did so in the context of ineffective assistance of counsel. Martinez does not engage with this body of persuasive authority and explicitly states that "[t]his case does not involve a claim of ineffective assistance of counsel

. . . ." Appellant's Br. at 12. Martinez appears content to "announce a position" and leave it to this court to "discover and rationalize the basis for [her] claims . . . and then search for authority either to sustain or reject [her] position." *See Lamb v. Hoffman*, 2008 Guam 2 ¶ 35 (quoting *Wilson v. Taylor*, 577 N.W.2d 100, 105 (Mich. 1998)).

[18]     There may be policy arguments for why this court should revisit its stated preference that Sixth Amendment claims be brought in habeas proceedings if they require factual development outside the trial record.[3]  But Martinez has not made a compelling case here.  Based on the procedural posture of this case, we conclude the most prudent course is to clarify the appropriate standards, appoint habeas counsel, and instruct Martinez to seek collateral relief consistent with our prior order.

### 1. *McCoy* and the Sixth Amendment right to maintain innocence

#### a. *McCoy* announced a new rule of constitutional law based on a defendant's Sixth Amendment right to autonomy

[19]     *McCoy* is a landmark decision of the U.S. Supreme Court, where the Court held that the Sixth Amendment guarantees a defendant the right to "insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *McCoy*, 584 U.S. at 417.  The Court agreed with the majority of state courts which had concluded that "counsel may not admit her client's guilt of a

---

[3] We have broad discretion to order a limited remand "as may be just under the circumstances." 8 GCA § 130.60 (2005). Because section 130.60 is based on California law, *id.*, NOTE, we find California caselaw persuasive. The scope of our authority "includes the authority to order a limited remand 'to allow the trial court to resolve one or more factual issues affecting the validity of the judgment but distinct from the issues submitted to the jury, or for the exercise of any discretion that is vested by law in the trial court.'" *See People v. Wilson*, 552 P.3d 974, 1025 (Cal. 2024) (quoting *People v. Braxton*, 101 P.3d 994, 1005 (Cal. 2004)). "[T]ypically when a court orders a remand—limited or otherwise—it does so to permit further proceedings concerning an issue raised on appeal, as part of its resolution of that appeal." *Id.* We reaffirm that we can order a limited remand in an appropriate case. Nothing in section 130.60's broad grant of authority for remand "as may be just under the circumstances" forecloses our ability to order a limited remand to develop the record on a Sixth Amendment claim. *See* 8 GCA § 130.60. However, we are not persuaded that this case warrants departure from our usual preference for development of the record in a collateral proceeding.

charged crime over the client's *intransigent objection* to that admission." *Id.* at 426 (emphasis added); *see also id.* at 420 ("We granted certiorari in view of a division of opinion among state courts of last resort on the question whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's *intransigent and unambiguous objection*." (emphasis added)). The majority further explained:

> If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way.

*Id.* at 424. The Court stated it was not applying its ineffective assistance of counsel jurisprudence because it was "a client's autonomy, not counsel's competence," that was at issue. *Id.* at 426.

[20] Federal courts have generally interpreted *McCoy* as imposing two obligations on trial counsel when they believe conceding guilt is the wisest path: (1) "He must consult with his client," and (2) "if the client engages, he may not 'steer the ship the other way.'" *United States v. Hashimi*, 110 F.4th 621, 629 (4th Cir. 2024) (quoting *McCoy*, 584 U.S. at 424). "If the lawyer violates these rules and thus 'usurp[s] control of an issue within [the defendant's] sole prerogative,' the remedy is a new trial, regardless of whether prejudice can be demonstrated." *Id.* (alterations in original) (quoting *McCoy*, 584 U.S. at 426-27). In other words, *McCoy* established that "[v]iolation of a defendant's Sixth Amendment-secured autonomy" is a structural error. *See McCoy*, 584 U.S. at 427.

[21] Given the relative newness of the decision, there is uncertainty whether *McCoy* applies in non-capital cases. *See, e.g.*, *Aroz v. Covello*, No. 2:21-cv-1934 DJC CSK P, 2024 WL 3792388, at *46 (E.D. Cal. Aug. 13, 2024) (collecting district court cases); *Harris v. State*, 856 S.E.2d 378, 383 n.7 (Ga. Ct. App. 2021) ("We note that there is some uncertainty as to whether *McCoy*'s holding extends to non-capital cases.").

### b. Claims of ineffective assistance of counsel and violations of *McCoy* are not mutually exclusive

[22]     Although a *McCoy* claim is based on the Sixth Amendment, it is not necessarily an ineffective assistance of counsel claim. *See Krogmann v. State*, 914 N.W.2d 293, 318 (Iowa 2018) ("[I]t is important . . . to distinguish between claims of ineffective assistance of counsel and other claims based on the Sixth Amendment . . . ." (citing *McCoy*, 584 U.S. at 426)). The *McCoy* majority emphasized that review under the ineffective assistance rubric was not apt because (1) their decision focused on "a client's autonomy, not counsel's competence," and (2) a violation of autonomy was structural error where prejudice is presumed. *See* 584 U.S. at 426. However, as the dissenters noted, it is "hard to imagine a situation in which a competent attorney might take" the approach of conceding guilt on all charges in a non-capital case. *Id.* at 433 (Alito, J., dissenting). And furthermore, the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648, 657, 666 (1984), establishes that there are certain scenarios where counsel's deficient performance is presumed to be prejudicial—where there has been an "actual breakdown of the adversarial process." Thus, although the Sixth Amendment separately protects a client's autonomy and right to effective assistance of counsel, both rights may be violated when trial counsel concedes their client's guilt.

[23]     Before *McCoy*, other courts had found that a concession of guilt could violate a defendant's Sixth Amendment right to counsel. For example, over 25 years before *McCoy*, the Ninth Circuit recognized that "[w]hen a defense attorney concedes that there is no reasonable doubt concerning the only factual issues in dispute, the Government has not been held to its burden of persuading the jury that the defendant is guilty." *United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir. 1991). In *Swanson*, the Ninth Circuit held that such claims should be evaluated under the ineffective assistance standard articulated in *Cronic* where prejudice is presumed. *See id.* at 1072

(citing *Cronic*, 466 U.S. 648). In 1985, the North Carolina Supreme Court held that "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 337 S.E.2d 504, 507-08 (N.C. 1985). North Carolina courts refer to a claim of per se ineffective assistance based on concession of guilt as a "*Harbison* claim."[4] *E.g.*, *State v. Maniego*, 594 S.E.2d 242, 246 (N.C. Ct. App. 2004).

[24]     In the early 2000s, the Florida Supreme Court relied in part on *Harbison* and other North Carolina decisions, *see Nixon v. Singletary*, 758 So. 2d 618, 623, 625 (Fla. 2000) (per curiam) (citing *Harbison*, 337 S.E.2d at 504, 507; *State v. House*, 456 S.E.2d 292, 297 (N.C. 1995)), when it held trial counsel is per se ineffective "[w]ithout a client's affirmative and explicit consent to a strategy of admitting guilt to the crime charged," *Nixon v. State*, 857 So. 2d 172, 176 (Fla. 2003) (per curiam). However, this decision was reversed by the U.S. Supreme Court in *Florida v. Nixon*, 543 U.S. 175 (2004).[5]

[25]     In *Nixon*, the Supreme Court held that defense counsel's failure to obtain defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient. 543 U.S. at 178. The Court stated that trial

---

[4] The North Carolina Supreme Court has stated that "an on-the-record exchange between the trial court and the defendant is the preferred method of determining whether the defendant knowingly and voluntarily consented to an admission of guilt during closing argument," but it has also "declined to define such a colloquy as the sole measurement of consent or to set forth strict criteria for an acceptable colloquy." *State v. Thompson*, 604 S.E.2d 850, 879 (N.C. 2004). When no colloquy occurred, North Carolina courts have ordered limited remand to hold an evidentiary hearing "for the sole purpose of determining whether defendant knowingly consented to trial counsel's concessions of defendant's guilt to the jury." *See State v. Thomas*, 397 S.E.2d 79, 80 (N.C. 1990).

[5] The U.S. Supreme Court's decision in *Nixon* called into question state court decisions like *Harbison* on which the lower court had relied. *See Nixon v. Singletary*, 758 So. 2d 618, 623, 625 (Fla. 2000) (per curiam) (citing *State v. Harbison*, 337 S.E.2d 504, 504, 507 (N.C. 1985)), *rev'd and remanded*, 543 U.S. 175 (2004). North Carolina has continued to follow *Harbison* after *Nixon* (and after *McCoy*), but it may be doing so on state law grounds. *See State v. Maready*, 695 S.E.2d 771, 779 & n.3 (N.C. Ct. App. 2010) (observing that *Nixon* did not hold *Harbison* ran afoul of U.S. Constitution and that state courts may set procedural and substantive requirements "that exceed the constitutional minimum established by the United States Supreme Court"). Because Martinez does not brief these state court decisions addressing concessions of guilt, we find this case is a poor candidate to determine whether a *Harbison*-like colloquy procedure should be adopted, or whether such a procedure is required under the Organic Act.

counsel's "concession of Nixon's guilt [did] not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.'" *Id.* at 190 (second alteration in original) (quoting *Cronic*, 466 U.S. at 666). The Court also emphasized the unique nature of capital murder trials, observing that "[a]lthough such a concession in a run-of-the-mine trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id.* at 190-91. Thus, while *Nixon* may have undermined state court decisions that have found a concession of guilt without the defendant's consent to be per se ineffective, *Nixon* still considered an attorney's concession of guilt under an ineffective assistance framework.

[26]    The Supreme Court did not overrule *Nixon* in *McCoy*; rather, the Court left undisturbed the holding that "when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, '[no] blanket rule demand[s] the defendant's explicit consent' to implementation of that strategy." *McCoy*, 584 U.S. at 417 (alterations in original) (quoting *Nixon*, 543 U.S. at 181, 192). Notably, both *Nixon* and *McCoy* were death penalty cases, and both suggest that it may be ineffective to concede guilt in non-capital cases. *See McCoy*, 584 U.S. at 433 (Alito, J., dissenting) (explaining that it is "hard to imagine" a non-capital case in which a competent attorney would choose to concede his client's guilt at trial); *Nixon*, 543 U.S. at 190-91 ("[S]uch a concession in a run-of-the-mine trial might present a closer question . . . .").

[27]    Courts generally view *McCoy* and *Nixon* as capable of being harmonized. *See, e.g.*, *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) (analyzing concession of guilt under both autonomy and ineffective assistance frameworks). Neither case requires a colloquy on the record before pursuing a strategy involving concession of guilt:

> We have no occasion to decide whether an on-the-record colloquy with the court is a necessary predicate to a lawyer's concession of guilt at trial. But defense counsel planning to concede their client's guilt at trial might be well advised, under *McCoy*, to put their consultations with their clients on the record. We of course have no desire to add to the burdens of trial courts in conducting criminal trials. But we trust it will be the rare case, particularly outside the capital-case context of *McCoy* and *Nixon*, in which defense counsel will think it advisable to concede a client's guilt to the jury.

*Hashimi*, 110 F.4th at 631 n.5 (citations omitted). Thus, while a concession of guilt may run afoul of multiple constitutional rights, there is no federal right to a colloquy before a concession of guilt.

[28] The Sixth Amendment protects a client's autonomy to assert their innocence at trial; it also ensures the effective assistance of counsel. Depending on the circumstances, when defense counsel concedes guilt without consent, this may override the defendant's autonomy in violation of *McCoy*, result in the breakdown of the adversarial process under *Cronic*, or both.

## 2. Courts generally hold that *McCoy* claims must be preserved in the trial record to be reached on direct appeal

[29] While this court has reiterated that ineffective assistance claims are better raised in collateral proceedings, *McCoy* claims are often addressed on direct appeal—including in *McCoy* itself, which arose on direct review. *See* 584 U.S. at 420. Thus, the preference for ineffective assistance claims to be brought in post-conviction proceedings does not necessarily extend to *McCoy* claims. But as this court's previous order stressed, when the trial record is silent on counsel's consultation and the client's consent, there is nothing for this court to review on direct appeal. Order at 3 (June 4, 2025).

[30] Texas courts have found that a "defendant cannot simply remain silent before and during trial and raise a *McCoy* complaint for the first time after trial." *Turner v. State*, 570 S.W.3d 250, 276 (Tex. Crim. App. 2018). But this is not the harsh standard Martinez makes it out to be. *See* Appellant's Br. at 11-12; Digital Recording at 10:24:15-10:25:43 (Oral Arg., Oct. 20, 2025) (arguing this language from *Turner* "turns *McCoy* on its head"). In *Turner*, the court explained

that to preserve a *McCoy* claim for appellate review, a defendant "should not be expected to object with the precision of an attorney," and that it was sufficient for the defendant to timely make an "express statement[] of [his] will to maintain innocence" somewhere in the record. *Id.* (second alteration in original) (footnotes omitted).

[31]    The California Court of Appeal has gone a step further, observing, "[W]e do not think preservation of the Sixth Amendment right recognized in *McCoy* necessarily turns on whether a defendant objects in court before his or her conviction." *People v. Eddy*, 244 Cal. Rptr. 3d 872, 879 (Ct. App. 2019); *see also Hashimi*, 110 F.4th at 630 n.4 ("Of course, a client could . . . stand up in open court and disavow his lawyer's concession. But we do not craft legal rules to encourage clients to speak out of turn in court, and, had [defendant] done so, the district court doubtless would have responded . . . with an admonition that the court 'would not permit any other outbursts.'" (citation modified) (quoting *McCoy*, 584 U.S. at 419)).  Instead, to reach a *McCoy* claim on direct appeal, California courts require that "the record must show (1) that defendant's plain objective is to maintain his innocence and pursue an acquittal, and (2) that trial counsel disregards that objective and overrides his client by conceding guilt." *Eddy*, 244 Cal. Rptr. 3d at 879.

[32]    Martinez has failed to direct this court to the decision of any appellate court that has entertained a *McCoy* claim on direct appeal when faced with a silent record.[6]  Thus, we decline to do so here.

//

//

---

[6] As discussed above, North Carolina courts will order a limited remand to develop a *Harbison* claim.  *See State v. Crump*, 848 S.E.2d 501, 507 (N.C. Ct. App. 2020) ("*McCoy* did not change our *Harbison* landscape.").  But *Harbison* claims deal with ineffective assistance, and Martinez vociferously argues her claim must not be treated as such.  *See* Appellant's Reply Br. at 6-7 (Aug. 7, 2025) ("Forcing *McCoy* claims into the ineffective assistance framework undermines their constitutional significance and subjects defendants to inappropriate procedural hurdles.").

**3.   Limited remand to develop all Sixth Amendment claims—including both ineffective assistance and *McCoy*—may be salutary, but Martinez offers little justification for such a significant departure from established practice**

[33]    This court unambiguously instructed Martinez not to raise a *McCoy* claim in her opening brief if the record was silent.  Yet she does just that.  An attorney should zealously represent the interests of their clients—especially criminal defendants—and this includes pushing back against a court when they believe a decision is wrong.  *See, e.g.*, *Conklin v. Warrington Twp.*, Civil Action No. 1:05-CV-1707, 2006 WL 2246415, at *2 (M.D. Pa. Aug. 4, 2006) ("When an attorney is of the opinion that the court has issued an erroneous ruling, it is his or her duty as an advocate to seek reconsideration or clarification of that ruling."), *aff'd*, 304 F. App'x 115 (3d Cir. 2008).  But there is a sharp distinction between zealous advocacy and seemingly disregarding a court order without explanation.  Martinez contends:

> [T]his case presents the Court with a matter of first impression in Guam: whether a *McCoy* claim may be raised on direct appeal where the record clearly shows that trial counsel concedes guilt, but contains no evidence of consultation or consent.  While *Turner* required that express objection, other courts – including the Fourth Circuit in *United States v. Hashimi*, 110 F.4th 621 (4th Cir. 2024) – have adopted a more faithful interpretation of *McCoy* and *Nixon* where the first inquiry is whether trial counsel consulted with the defendant before conceding guilt.

Appellant's Br. at 11-12.  If this court had overlooked the precedent of "other courts" referenced by Martinez, it would be inclined to reconsider its order.  However, Martinez did not raise the *Hashimi* decision or decisions of "other courts" in her motion, and the cases she raises in later briefing are inapposite.

[34]    It is incorrect to claim *Hashimi* supports the proposition that a *McCoy* claim should be heard on direct appeal when the record is silent.  That case was an appeal from a post-conviction motion under 28 U.S.C. § 2255, which essentially fills the role of a habeas petition in the federal

system.[7]  *See Hashimi*, 110 F.4th at 622-24.  None of the cases Martinez cites hold that a *McCoy* claim can or should be heard on direct appeal when the record is silent.  *See* Appellant's Br. at 15 (citing *United States v. Arrington*, Crim. Action No. 19-0532-TDC, 2025 WL 815414 (D. Md. Mar. 12, 2025); *United States v. Schaffer*, 731 F. Supp. 3d 382, 392 (N.D.N.Y. 2024)).  Rather, all the cited authorities required the development of facts outside the trial record in a post-conviction proceeding before adjudicating the defendant's *McCoy* claim.  *See Hashimi*, 110 F.4th at 624 (remanding for post-conviction hearing under § 2255 for further factual development); *Arrington*, 2025 WL 815414, at *1 (granting § 2255 motion after evidentiary hearing); *Schaffer*, 731 F. Supp. 3d at 386 & n.5 (granting motion for new trial based on affidavits).

[35]     Martinez claims that "the Government argues this right arises only if a defendant expressly objects on the record to counsel's concession strategy."  Appellant's Reply Br. at 1 (Aug. 7, 2025).  But this mistakes the existence of a right with preservation of an issue for appellate review.  While the Sixth Amendment-secured autonomy right to make choices about conceding guilt to a jury exists independent of what the record reveals, on a fundamental level, appellate courts must have an adequate record to make a decision.  *See, e.g.*, *Grimm v. Fox*, 33 A.3d 205, 212 n.12 (Conn. 2012) ("Providing this court with an adequate record for review is a basic rule of appellate procedure in that this court is incapable of meaningful review of a claim without an adequate record.").  When faced with an analogous request, the Eighth Circuit declined a request for remand so a *McCoy* claim could be addressed on direct appeal.  *United States v. Felicianosoto*, 934 F.3d 783, 787 (8th Cir. 2019).

---

[7] At oral argument, Martinez asserted that Guam has no similar post-conviction statute or rule.  *See* Digital Recording at 10:05:14-10:05:39, 10:16:30-10:17:53 (Oral Arg., Oct. 20, 2025).  But in the absence of any post-conviction legislation, Martinez fails to articulate what standards or procedures this court should adopt.  *See People v. Adriatico*, 2024 Guam 7 ¶ 14 ("[T]he Superior Court can properly exercise its general jurisdiction to consider post-conviction motions if they are not explicitly barred by statute.").

[36]     To some extent, Martinez is correct that this case presents an issue of first impression and, therefore, this court has the authority to decide for itself how these claims should be preserved and raised. *See* Appellant's Br. at 11-12; *cf. Yokeno v. Lai*, 2014 Guam 18 ¶ 14 ("This is a question of first impression in our court, so we will examine, analyze, and weigh the three approaches appellate courts appear to take in dealing with such cases."); *May v. People*, 2005 Guam 17 ¶ 20 ("This is an issue of first impression in our jurisdiction, and we must decide whether this court wishes to follow a majority of states . . . ."). But this ignores the prior order we issued in this case and this court's Sixth Amendment jurisprudence. The argument that Sixth Amendment claims should be heard on direct appeal—even if a limited remand is required to develop facts outside the trial record—is non-frivolous.[8] However, Martinez does not address three decades of this court's precedent holding that habeas proceedings are preferable when facts need to be developed outside the trial record.[9]

[37]     Although there is a non-frivolous argument for this court to revisit its precedent on limited remand, Martinez largely fails to make it. Instead, she raises three non sequiturs to prioritize remand over habeas. First, she contends that "*McCoy* violations concern structural constitutional

---

[8] *See, e.g.*, Brent E. Newton, *Incentivizing Ineffective-Assistance-of-Counsel Claims Raised on Direct Appeal: Why Appellate Courts Should Remand "Colorable" Claims for Evidentiary Hearings*, 22 J. App. Prac. & Process 107, 116 (2022) ("Particularly after the Supreme Court's 2012 decision in *Martinez v. Ryan*, there are at least five reasons why, if a defendant represented by new counsel on direct appeal identifies a colorable claim of ineffective assistance of counsel by his trial court counsel, an appellate court should remand for an evidentiary hearing rather than relegate the defendant to raising the claim in habeas corpus proceedings." (footnote omitted)). For the past 40 years, the North Carolina Supreme Court has required limited remand in cases when trial counsel concedes guilt, although Martinez appears ignorant of this jurisprudence. *See Harbison*, 337 S.E.2d at 507-08; *see also Thomas*, 397 S.E.2d at 80 (remanding case to superior court for evidentiary hearing to determine whether defendant knowingly consented to trial counsel's concessions of defendant's guilt to jury). Additionally, it seems that both the First Circuit and D.C. Circuit employ limited remand to develop ineffective assistance claims on direct appeal. *See United States v. Colón-Torres*, 382 F.3d 76, 84-85 (1st Cir. 2004); *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003).

[9] In over a dozen published opinions, this court has instructed defendants to develop a factual record in a collateral proceeding. *See generally People v. Ueki*, 1999 Guam 4; *People v. Root*, 1999 Guam 25; *People v. Hall*, 2004 Guam 12; *People v. Aguirre*, 2004 Guam 21; *People v. Meseral*, 2014 Guam 13; *People v. Damian*, 2016 Guam 8; *People v. Guerrero*, 2017 Guam 4; *People v. Roberson*, 2017 Guam 18; *People v. Nathan*, 2018 Guam 13; *People v. Quintanilla*, 2019 Guam 25; *People v. Titus*, 2020 Guam 16; *People v. Reyes*, 2020 Guam 33; *People v. Taisacan*, 2023 Guam 19; *People v. Narruhn*, 2025 Guam 11.

error, not ineffective assistance of counsel. *McCoy* claims are fundamentally different from ineffective assistance claims because they concern the defendant's autonomy rather than counsel's competence." Appellant's Br. at 12. The Supreme Court in *McCoy* did not apply its ineffective assistance of counsel jurisprudence "[b]ecause a client's autonomy, not counsel's competence, [was] in issue . . . ." 584 U.S. at 426. But *McCoy* and *Cronic/Nixon* are not mutually exclusive Sixth Amendment claims. *See, e.g.*, *Jurado v. Davis*, 12 F.4th 1084, 1101 (9th Cir. 2021) ("[C]ounsel's tactics did not run afoul of *Nixon* or *McCoy*."). This argument ignores decisions like *Swanson* that find such a concession of guilt undermines the adversarial process and is subject to *Cronic*'s presumption of prejudice. *See Swanson*, 943 F.2d at 1072-73; *see also People v. Soram*, 2024 Guam 10 ¶ 45 (quoting *Swanson* and agreeing that concession of guilt without client's consent is per se deficient performance). There is substantial overlap between a *McCoy* claim and ineffective assistance of counsel; as the dissent observed in *McCoy*, one would be hard pressed to conceive of a *McCoy* violation where counsel was not also ineffective. *See McCoy*, 584 U.S. at 433 (Alito, J., dissenting).

[38]     The second argument Martinez makes is a contradictory claim that no facts outside the trial record need development because "[t]he only factual question is whether Martinez was consulted or consented, which can be readily addressed through remand proceedings that allow both Martinez and trial counsel to testify about their communications." *See* Appellant's Br. at 13. But arguing that an evidentiary hearing on limited remand would do anything but develop facts outside the trial record is incorrect. If the record is silent, then the trial record must be supplemented. *See State v. McAllister*, 847 S.E.2d 711, 724-25 (N.C. 2020). For most Sixth Amendment claims, this court has expressed a preference for supplementing the record in post-conviction proceedings rather than via limited remand. *See* cases cited *supra* note 9. The purpose of the evidentiary hearing requested by Martinez would be to supplement a silent record; the incorrect assertion that

this would somehow not be an "evidentiary inquiry beyond the official record," *People v. Cruz*, 2023 Guam 1 ¶ 7, does nothing to dislodge our procedural preference for collateral proceedings.

[39]     The third unpersuasive argument Martinez makes is that "requiring habeas proceedings" for unpreserved *McCoy* claims would create a "a dangerous precedent" that would "effectively immunize trial attorneys from *McCoy* violations simply by failing to create a record of consultation." Appellant's Br. at 14. Martinez further claims this would create a "perverse incentive" for defense attorneys "to avoid discussing concession strategies with their clients" and would "undermine the core protection that *McCoy* was designed to provide." *Id.* at 14. But Martinez provides no support for these conclusory statements.

[40]     Nothing about a post-conviction proceeding should "immunize" the actions of trial counsel from review.[10] Martinez implies that habeas proceedings do not adequately protect a defendant's constitutional rights. *See* Appellant's Br. at 19. The implications of this argument are serious, but she does nothing to explain why this is the case, or how this court might exercise its supervisory authority to remedy this alleged injustice. *Cf. Tumon Partners, LLC v. Shin*, 2008 Guam 15 ¶ 18 ("This case fails to present any extraordinary circumstances warranting the use of our supervisory authority.").

---

[10] As one leading treatise explains: "It is natural for a lawyer to take ineffective assistance claims personally, but they should not be. . . . Ineffective assistance claims should, more properly, be characterized as a challenge to the legitimacy of the process that led to the conviction and not the lawyer's culpability. . . . The former client desperately needs former counsel's help . . . ." John Wesley Hall, Jr., *Prof. Resp. Crim. Def. Prac.* § 10:69 (4th ed. (Feb. 2025 Update)) (footnotes omitted). Martinez appears to subscribe to this fallacy that an ineffective assistance claim is an adjudication of a defense attorney's culpability or skill. To the extent this sentiment is widely shared, we correct this misunderstanding: "[A]s to a former client, the lawyer must: do no harm to the client; cooperate with post-conviction counsel and deliver files; protect confidentiality of the client's secrets, to the extent possible; and be completely candid in the post-conviction proceeding." *Id.* § 10:71 (footnotes omitted). "[F]ormer defense counsel has a duty to aid post-conviction counsel in identifying legal and factual issues which could be pursued, and this includes a duty of candor where former counsel may believe he or she was ineffective." *Id.* § 10:74 (footnote omitted). "Many criminal defense lawyers, as they should, subscribe to th[e] view" that "[s]ometimes, former counsel will have to 'fall on his sword' and admit fault. One should not fear the outcome. Being found ineffective is not the end of the world and may not even harm one's reputation." *Id.*

**[41]**     The strongest argument raised by Martinez to favor remand over post-conviction proceedings is judicial economy.  Martinez argues:

> [R]emand for factual development ensures that *McCoy* violations are addressed promptly and prevents the waste of judicial resources inherent in requiring separate habeas proceedings.  A defendant who successfully establishes a *McCoy* violation is entitled to a new trial regardless of whether the claim is raised on direct appeal or in habeas.  By addressing the issue on direct appeal through remand, the Court can resolve the constitutional violation efficiently while ensuring adequate factual development.

Appellant's Br. at 13.  This echoes the sentiment of legal scholars who have argued that "because a defendant would be entitled to an evidentiary hearing if he or she raises a colorable ineffectiveness claim in a habeas petition, the remedy of remand on direct appeal is simply an earlier expenditure of the financial and judicial recourses that would be justified at a later point in the case." *See* Brent E. Newton, *Incentivizing Ineffective-Assistance-of-Counsel Claims Raised on Direct Appeal: Why Appellate Courts Should Remand "Colorable" Claims for Evidentiary Hearings*, 22 J. App. Prac. & Process 107, 129 (2022) (footnotes omitted).

**[42]**     But it is not categorically true that limited remand will conserve judicial resources in all cases.  For instance, when other reversible errors are present, a limited remand may delay a defendant receiving relief.  *Cf. People v. Meseral*, 2014 Guam 13 ¶ 87 (passing on ineffective assistance claim because sentence was reversed on other grounds).  When a concession of guilt on an otherwise silent record is the strongest (or only) issue that could be raised on appeal, limited remand may conserve judicial resources.  Whenever a defendant requests a limited remand under 8 GCA § 130.60, she would do well to address whether remand will promote judicial economy.  Where an evidentiary inquiry beyond the official record may be necessary to rule on a defendant's Sixth Amendment claims, appellate counsel should inform this court whether other potential trial errors exist when they ask us to invoke our authority under section 130.60.  *Cf.* Guam R. App. P. 35 (requiring counsel to identify any potentially non-frivolous issues).  Furthermore, we note that

our appellate rules permit the filing of affidavits in support of motions. *See* Guam R. App. P. 6. Our resolution of a motion for limited remand to develop a *McCoy* claim would be greatly aided if it was accompanied by affidavits from the defendant or trial counsel sworn under penalty of perjury.[11] *Cf. Schaffer*, 731 F. Supp. 3d at 386 & n.5 (resolving new trial motion based on affidavits, because they rendered evidentiary hearing unnecessary).

[43] A remand would not conserve judicial resources here. Martinez has not convinced us that the interests of justice require remand rather than a habeas proceeding.

[44] We are sympathetic to Martinez's argument that requiring criminal defendants "to spontaneously object places an impossible burden on the most vulnerable." Reply Br. at 5. On this point, we agree with the California Court of Appeal that "preservation of the Sixth Amendment right recognized in *McCoy* [should not] necessarily turn[] on whether a defendant objects in court before his or her conviction." *See Eddy*, 244 Cal. Rptr. 3d at 879; *see also Turner*, 570 S.W.3d at 276 ("[A] defendant faced with a *McCoy* issue should not be expected to object with the precision of an attorney."). But this court cannot presume a defendant's Sixth Amendment rights were violated on a silent record. *See State v. Meadows*, 916 S.E.2d 578, 583-84 (N.C. Ct. App. 2025) ("[T]he absence of any indication in the record of defendant's consent to his counsel's admissions will not—by itself—lead us to 'presume defendant's lack of consent.'" (citation omitted)).

[45] To some extent, we agree with Martinez. *See* Appellant's Br. at 14-15. Decisions like *Hashimi* articulate the correct standard that should be applied by trial courts *after* holding an evidentiary hearing. Generally, when evaluating a *McCoy* claim, courts must determine whether trial counsel: (1) consulted with his client and (2) overrode his client's autonomy by conceding

---

[11] We note that appellate counsel filed a declaration supporting his motion, which described representations made by Martinez about concessions of guilt. Decl. Counsel Supp. Mot. Ltd. Remand (Apr. 21, 2025). But these representations were not made by Martinez under penalty of perjury.

guilt after express statements of the client's will to maintain innocence. *See McCoy*, 584 U.S. at 424; *Hashimi*, 110 F.4th at 629; *Eddy*, 244 Cal. Rptr. 3d at 879.

[46]    But this court is still left to grapple with how to apply that standard when the record is silent. Ultimately, in this case, we cannot apply a standard absent a post-conviction evidentiary hearing. This court's stated preference is for supplementation of the factual record to occur in a habeas proceeding. *See* cases cited *supra* note 9. Although several legal scholars and sister courts have raised valid questions about this preference, Martinez has not.

[47]    Because the *McCoy* claim is the only issue raised on direct appeal, and we cannot conclude whether Martinez was consulted or consented to a concession of guilt, we affirm without prejudice to Martinez's right to litigate her claim in collateral proceedings.

## B.  We Appoint Martinez Habeas Counsel

[48]    "When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief . . . ." *People v. Romero*, 883 P.2d 388, 391 (Cal. 1994) (in bank); *cf. May v. People*, 2005 Guam 17 ¶ 9 (finding California habeas caselaw persuasive absent compelling reason to deviate because Guam's habeas statutes were derived from California). In a typical habeas case, a court does not appoint counsel until the petitioner first establishes a prima facie claim for relief. *Cf. In re Clark*, 855 P.2d 729, 748 (Cal. 1993) (in bank) (finding no federal constitutional right to counsel to collaterally attack a judgment but noting its precedent that "if a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns"), *superseded by statute on other grounds*, Cal. Prop. 66, Death Penalty Reform and Savings Act of 2016 (approved in Gen. Elec., Nov. 8, 2016), *as recognized in*, *In re Friend*, 489 P.3d 309 (Cal. 2021). However, the U.S. Supreme Court has suggested, without holding, that a prisoner may

have "a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 8-9 (2012); *accord People v. Narruhn*, 2025 Guam 11 ¶ 58 n.17.[12]

[49]   That the trial record does not disclose whether Martinez was consulted or consented to a concession of guilt does not mean such a claim should be summarily denied in collateral proceedings. The facts as presented by Martinez, if true, would entitle her to relief under *McCoy*. As such, we exercise our discretion to appoint habeas counsel to represent Martinez. Attorney Leevin T. Camacho is appointed as counsel for Martinez to file and litigate a petition for a writ of habeas corpus.

## V.  CONCLUSION

[50]   A *McCoy* claim may be raised on direct appeal only if the client's objection to counsel's concession of guilt appears somewhere in the record. As a matter of preservation, this court cannot presume a constitutional violation from a silent record. Unless a litigant persuades us that we need to revisit our Sixth Amendment jurisprudence, where the record is silent, the proper avenue is to raise a claim challenging concession of guilt in a habeas proceeding based on *Cronic/Nixon* or *McCoy*. Although there may be policy reasons habeas is not the ideal vehicle for addressing Sixth Amendment claims—as opposed to limited remand on direct appeal—Martinez's arguments are unpersuasive.

---

[12] The Fourteenth Amendment's Due Process Clause also provides for a right to counsel in certain post-conviction proceedings when "fundamental fairness necessitates the assistance of a trained advocate." *United States v. Palomo*, 80 F.3d 138, 141 (5th Cir. 1996). Additionally, the California Supreme Court has held that due process demands the appointment of counsel where a habeas petition states a prima facie claim for relief. *In re Clark*, 855 P.2d 729, 748 (Cal. 1993) (in bank), *superseded by statute on other grounds*, Cal. Prop. 66, Death Penalty Reform and Savings Act of 2016 (approved in Gen. Elec., Nov. 8, 2016), *as recognized in*, *In re Friend*, 489 P.3d 309 (Cal. 2021). Because we find it appropriate to appoint counsel in this case *sua sponte*, and Martinez does not argue she has a right to habeas counsel, we need not determine whether there is a right to post-conviction counsel in all cases where the record is insufficiently developed to address a claim on direct appeal.

**[51]**     The record is not complete enough to determine whether trial counsel consulted Martinez about conceding guilt to the jury, nor does it disclose whether Martinez consented to this tactic. We cannot make definitive findings based on the current record, and because Martinez fails to persuade us that limited remand would be appropriate, we appoint Martinez habeas counsel with instructions to file a writ of habeas corpus in the Superior Court.  We **AFFIRM WITHOUT PREJUDICE** to Martinez's right to raise her claims in a habeas corpus proceeding.[13]

| /s/ | /s/ |
|:---:|:---:|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
ROBERT J. TORRES
Chief Justice

---

[13] Although our focus is specifically on the *McCoy* claim raised on direct appeal, the general rule is that all potential claims cognizable on habeas review should be raised in the first petition, and subsequent claims that could have been raised in the first petition are generally barred.  *See In re Friend*, 489 P.3d at 315 (explaining "successiveness bar" ensures "legitimate claims are pressed early in the legal process" and "limits consideration of claims that were unjustifiably omitted from earlier petitions").